Larry Dean DAVIS, Plaintiff,

v.

MIDLAND FUNDING, LLC, a Delaware limited liability company; Midland Credit Management, Inc., a Kansas corporation; The Brachfeld Law Group, A Professional Corporation, a California corporation; and Erica Lynn Brachfeld, individually and in her official capacity, Defendants.

No. CIV. S–13–2316 LKK/CKD.

United States District Court,
E.D. California.

Signed Aug. 6, 2014.

Filed Aug. 7, 2014.

Raeon Rodrigo Roulston, Fred W. Schwinn, San Jose, CA, for Plaintiff.

Tomio B. Narita, Robert Travis Campbell, Severson & Werson, Sarah Helene Scheinhorn, Simmonds & Narita, LLP, San Francisco, CA, Erica Lynn Brachfeld, Brachfeld Law Group, PC, Los Angeles, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

Plaintiff Larry Dean Davis sues defendants Midland Funding, LLC, Midland Credit Management, Inc., Brachfeld Law Group, PC, and attorney Erica Lynn Brachfeld, alleging claims under the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ.Code §§ 1788–1788.33 ("Rosenthal Act"), as well as a state law claim for malicious prosecution. The gravamen of plaintiff's complaint is that defendants wrongly attempted to collect an obligation from him that was actually owed by another person.

## I. FORM OF MOTION

Defendants Midland Funding and Midland Credit Management have moved for summary judgment. (ECF No. 36.) Defendants Brachfeld Law Group and Erica Lynn Brachfeld join in this motion. (ECF No. 37.) Plaintiff opposes, and also contends that this motion is more properly considered a motion to dismiss for lack of subject matter jurisdiction. (ECF No. 40.)

After the Status (Pretrial Scheduling) Conference held on April 7, the court issued an order providing, in pertinent part: "Jurisdiction . . . is disputed by all defendants. Defendant shall bring on a motion for lack of jurisdiction within sixty (60) days from the date of this order." (Order, April 8, 2014, ECF No. 32.) Defendants' motion was filed on June 5, 2014, just within the sixty-day deadline.

It does not appear that the court must decide whether defendants' motion is better considered a motion for summary judgment under Fed.R.Civ.P. 56 or a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Defendants incorrectly assert that this motion "involve[es] factual issues which also go to the merits . . . ." (Motion 3, ECF No. 36.) It does not. It presents a straightforward question of law: in order to proceed in federal court under the FDCPA, must a plaintiff, who alleges that he was subject to collection efforts on an obligation that he does not owe, be able to establish that the subject obligation is a "debt" within the meaning of 15 U.S.C. § 1692a(5)? Resolving this question does not hinge on any facts, disputed or undisputed, presented by the parties. As such, characterization of this motion as one brought under Rule 12(b)(1) or Rule 56 appears irrelevant.

## II. BACKGROUND

### A. Factual Background

Given the purely legal nature of the question presented, it is immaterial whether the court herein deems the factual allegations in the complaint to be true (as it would in a motion brought under Rule 12) or instead relies on the admissible evidence submitted by the parties (as it would in a motion under Rule 56). Therefore, the court will summarize the relevant facts from both sources.

Plaintiff alleges as follows.

In September 2011, plaintiff, whose name is Larry Dean Davis, received a telephone call from a representative of defendant Midland Credit Management, who was attempting to collect an obligation owed by one "Larry D. Davis."[1] (Complaint ¶ 22.) Plaintiff informed the caller that the firm was attempting to collect from the wrong person, as plaintiff owed no debts. (*Id.*) Plaintiff provided the caller with the last two digits of his Social Security number; the caller confirmed that the numbers did not match the records for "Larry D. Davis." (*Id.*) The caller stated that the firm would investigate the matter. (*Id.*)

In March 2011, defendant Brachfeld Law Group sent defendant a collection letter. (*Id.* ¶¶ 23, 24, Ex. 1.) In a June 2011 telephone call, plaintiff was informed that the "Larry D. Davis" from whom Brachfeld Law Group was seeking to collect lived in Plano, Texas. (*Id.* ¶ 26.) In July 2011 and October 2011, Brachfeld Law Group again sent plaintiff collection letters. (*Id.* ¶¶ 27, 29, Exs. 2, 3.)

On October 4, 2011, defendant Midland Funding, LLC filed a lawsuit entitled *Midland Funding, LLC v. Larry Davis*, No. MCV0052495, in the Superior Court of

---

**1.** This individual is not a party to this action.

California for the County of Placer ("State Court Action").[2] (Complaint ¶ 32.) Midland Funding's counsel of record in the action was defendant Erica L. Brachfeld, on behalf of the Brachfeld Law Group. (*Id.* Ex. 4.) The complaint therein alleges that plaintiff is seeking to collect a debt assigned to it by Citibank. (*Id.*)

Later that October, Plaintiff's wife was served with the complaint in the State Court Action. (*Id.* ¶ 57.) On the same day, plaintiff contacted defendants and informed them that he had no outstanding or unpaid credit cards accounts, and that they were suing the wrong person. (*Id.* ¶ 58.) But defendants continued to prosecute the State Court Action. (*Id.* ¶¶ 61.)

In November 2012, plaintiff was served with a Request for Entry of Default and Court Judgment. (*Id.* ¶ 62, Ex. 5.) Plaintiff again called the Brachfeld Law Group to inform them that defendants had sued the wrong individual. (*Id.* ¶ 69.) Again, defendants did not dismiss the State Court Action. (*Id.* ¶¶ 70–71.)

On November 19, 2012, the state court entered a default judgment against plaintiff in the amount of $5,067.91 (*Id.* ¶ 74.)

On December 6, 2012, plaintiff received another collection letter from defendants. (*Id.* ¶ 75, Ex. 7.)

After plaintiff retained counsel, the default and the default judgment were vacated, and the State Court Action dismissed. (*Id.* ¶¶ 85–87.)

The undisputed facts submitted by defendants are as follows.

On August 31, 2010, Midland Funding acquired an unpaid financial obligation from CitiFinancial, Inc. belonging to an individual named "Larry D. Davis." (De-

fendants term this obligation the "Account.") (Statement of Undisputed Facts ("SUF") 3, ECF No. 36–1.) Midland Funding referred the Account to Midland Credit Management for collection; when the latter was unable to collect, it referred the Account to the Brachfeld Law Group for collection. (SUF 4, 5.) Midland Funding and Midland Credit Management lack any information as to whether the transactions which comprise the unpaid balance of the Account were incurred for personal, family, or household purposes. (SUF 6.)

### B. Procedural Background

This action was commenced on November 6, 2013. (ECF No. 1.) Defendants Midland Funding and Midland Credit Management filed a joint Answer on December 17, 2013. (ECF No. 9.) Defendant Brachfeld Law Group filed an Answer on January 13, 2014 (ECF No. 16) and Erica Lynn Brachfeld filed an Answer on January 14, 2014 (ECF No. 17); the latter two defendants then filed a joint First Amended Answer on March 16, 2014 (ECF No. 28).

### III. ANALYSIS

In 1977, Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). That same year, the California Legislature enacted the Rosenthal Act "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts."

---

**2.** The collection letters were sent to plaintiff at an address in Lincoln, California. (*Id.* Exs. 1, 2.) Lincoln is located in Placer County.

Cal. Civ.Code § 1788.1(b). In 1999, the California Legislature substantially amended the Rosenthal Act to incorporate many FDCPA provisions by reference, thereby making violations of these provisions into Rosenthal Act violations. Cal. Civ.Code § 1788.17. While the FDCPA authorizes enforcement action by the federal Fair Trade Commission, 15 U.S.C. § 1692l, both statutes largely rely on the efforts of private attorneys to regulate the debt collection industry.

### A. Defendants' argument

■ Defendants advance a textual argument for why plaintiff's claims fall outside the FDCPA's ambit.

Plaintiff has pled claims under 15 U.S.C. § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"), § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt"), and § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt").

Each of these provisions regulates debt collectors' conduct when attempting to collect a "debt," which the FDCPA defines, in turn, as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.... " 15 U.S.C. § 1692a(5).

At trial, plaintiff would ordinarily bear the burden of showing, by a preponderance of the evidence, that the defendants had violated the FDCPA. Among the elements that plaintiff would have to prove is that defendants were attempting to collect a "debt," as defined by the statute.

Defendants contend—and plaintiff does not dispute—that plaintiff is unable to establish whether the alleged obligation of "Larry D. Davis" which defendants sought to collect arose from a "debt." But as (i) plaintiff is simply unaware of the nature of the transactions, if any, which gave rise to the alleged obligation, and (ii) each of the FDCPA provisions under which plaintiff is proceeding proscribes conduct in the collection of a "debt," it follows that the FDCPA cannot apply to defendants' conduct herein. Or so defendants' argument goes.

### B. Authority cited

Defendants cite three Ninth Circuit cases—*Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067 (9th Cir.1992) (holding that whether an obligation was incurred for "personal, family, or household purposes" depends on the ultimate use of the borrowed funds); *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072 (9th Cir.2001) (holding that courts must "look to the substance of the transaction and the borrower's purpose in obtaining the loan" in deciding whether it was incurred for "personal, family, or household purposes"); and *Turner v. Cook*, 362 F.3d 1219 (9th Cir.2004) (holding that an obligation must be incurred in a consensual transaction in order to qualify for FDCPA protection)—in support of their position that plaintiff herein must prove that they were seeking to collect a "debt," as that term is defined under 15 U.S.C § 1692a(5).

This court has previously read *Bloom*, *Slenk*, and *Turner* together to "yield[ ] the following test: a plaintiff alleging an FDCPA violation must be able to show that the obligation giving rise to the challenged collection efforts arose from a transaction, first, involving a consensual dealing, and second, the subject of which was primarily for personal, family, or household purposes. In deciding the sec-

ond question, courts may look to the ostensible purpose for which the obligation was entered into, but it is the funds' actual use that is paramount." *Davis v. Hollins Law,* 968 F.Supp.2d 1072, 1077 (E.D.Cal. 2013) (Karlton, J.).

Taken literally, the court's prior reading of these precedents might appear to support defendants' position. But, in the court's view, these cases simply do not apply to the issue at hand, as in none of them does the plaintiff dispute having incurred the subject obligation.[3] All three instead concern the nature of the underlying obligation and whether the FDCPA was intended to reach the collection of such obligations. This is a legitimate inquiry because the FDCPA was not intended to address the collection of commercial debts. The issue presented herein is whether a debt collector that attempts to collect an obligation from the wrong person is subject to the FDCPA, even if there is some possibility that the underlying obligation stemmed from a commercial transaction.

A number of prior cases reject defendants' line of argument. *See, e.g., Collins v. Portfolio Recovery Assocs., LLC,* No. 2:12–cv–138, 2013 WL 9805805, 2013 U.S. Dist. LEXIS 162624 (E.D.Tenn. Jun. 7, 2013) ("The Court believes that Defendants' position—that a consumer cannot pursue an FDCPA action where she alleges that she lacks knowledge of the nature of the obligation because of identity theft—is untenable."); *Gonzalez v. Law Firm of Sam Chandra, APC,* No. 13–CV–0097–TOR, 2013 WL 4758944, 2013 U.S. Dist. LEXIS 126375 (E.D.Wash. Sep. 4, 2013) ("Defendants 'alleged' that Plaintiff owed a debt when they mailed her 'dunning' letters and later garnished her wages using her Social Security number to identify her. The fact that the debt actually belonged to someone else does not strip Plaintiff of a cause of action under the FDCPA.").

Ultimately, the precedents that defendants cite in support of their position are simply unpersuasive.

### C. Statutory interpretation

It is also unclear whether defendants' reading of 15 U.S.C. § 1692a constitutes sound statutory interpretation.

15 U.S.C. § 1692a(5), the FDCPA subsection on which defendants rely, provides:

> The term "debt" means any obligation **or alleged obligation** of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. (emphasis added.)

Another FDCPA provision, 15 U.S.C. § 1692a(3), reads:

> The term "consumer" means any natural person obligated **or allegedly obligated** to pay any debt.

A final FDCPA provision, 15 U.S.C. § 1692a(6), reads in pertinent part:

---

**3.** Another case cited by defendants, *Bartlett v. Blaser, Sorensen & Oleson,* No. 4:13–cv–00017–REB, 27 F.Supp.3d 1092, 2014 WL 2780462, 2014 U.S. Dist. LEXIS 85205 (D.Idaho Jun. 19, 2014) (Bush, M.J.), is similarly inapt. There is no allegation therein that defendants had directed collection efforts at the wrong plaintiff. Rather, the *Bartlett* court granted summary judgment to the defendants, on the grounds that the obligation that they sought to collect from plaintiff (a state court judgment stemming from allegedly-negligent plumbing work that he had performed) did not arise from a "transaction," and therefore was not a "debt" within the meaning of 15 U.S.C. § 1692a(5). This holding is perfectly consistent with the rule derived above from *Bloom,* 972 F.2d at 1067, *Slenk,* 236 F.3d at 1072, and *Turner,* 362 F.3d at 1219.

The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due **or asserted to be owed or due** another. (emphasis added.)

The highlighted text strongly suggests that Congress intended the FDCPA to protect consumers who were subjected to collection efforts for obligations they did not owe.

Other courts concur. While the Ninth Circuit appears not to have considered the issue, the Eighth Circuit rejected an argument similar to defendants' (albeit one based on subsection (3), rather than subsection (5), both quoted above), reasoning as follows:

[R]esolution of whether the plain language of § 1692a(3)'s "consumer" definition encompasses [plaintiff James] Dunham, someone mistakenly contacted by a debt collector, turns on the proper reading of the phrase "allegedly obligated to pay." [Defendant] PRA argues that because it erroneously contacted the wrong "James Dunham," it did not "allege" that Dunham was "obligated to pay any debt." In other words, PRA only alleged that the "James Dunham" who actually owes the payment obligation owed a debt, not the "James Dunham" who filed this lawsuit. Thus, PRA contends, Congress's decision to limit ... protections only to "consumers" reflects a congressional desire to withhold a cause of action ... from an individual like Dunham who a debt collector mistakenly contacts. Under PRA's interpretation of the [FDCPA], a person who has been abused by a debt collector's harassing tactics, which the FDCPA generally prohibits, could not invoke the protection of the FDCPA if the debt collector contacted the individual by mistake. This interpretation would read the phrase "allegedly obligated" to only apply to those who actually owe or owed the specific debt at issue, despite whether a debt collector asserted a person owes the specific debt. PRA's position too narrowly constricts the plain meaning of "alleged." [...] PRA alleged, albeit mistakenly, that Dunham owed the payment obligation. Simply put, a mistaken allegation is an allegation nonetheless. Thus, we read § 1692a(3) to include individuals who are mistakenly dunned by debt collectors.

*Dunham v. Portfolio Recovery Assocs., LLC,* 663 F.3d 997, 1002 (8th Cir.2011). Another district court in the Ninth Circuit, faced with the same argument, chose to follow *Dunham:*

The Court finds [*Dunham's* ] reasoning persuasive and adopts it in full. Defendants "alleged" that Plaintiff owed a debt when they mailed her "dunning" letters and later garnished her wages using her Social Security number to identify her. The fact that the debt actually belonged to someone else does not strip Plaintiff of a cause of action under the FDCPA. These claims may proceed.

*Gonzalez v. Law Firm of Sam Chandra, APC,* No. 13–CV–0097–TOR, 2013 WL 4758944, 2013 U.S. Dist. LEXIS 126375 (E.D.Wash. Sep. 4, 2013).

█ This court finds the reasoning in these opinions to be persuasive. By its plain text, the FDCPA encompasses claims brought by individuals subjected to collection efforts for obligations they are falsely alleged to have owed.

Nevertheless, the court recognizes that the circular definitions in 15 U.S.C §§ 1692a(3) and (5) give rise to some confusion. Subsection (3) defines "consum-

er" as "any natural person obligated or allegedly obligated to pay any **debt**," and subsection (5) defines "debt" as "any obligation or alleged obligation of a **consumer** ...." It is therefore at least possible to argue that, even if the FDCPA protects persons dunned for others' obligations, 15 U.S.C. § 1692a(5) still requires plaintiffs to characterize the nature of the underlying obligation as one incurred for "personal, family, or household purposes."

Such an interpretation runs afoul of the canon against absurdities, a longstanding principle of statutory interpretation. "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter." *United States v. Kirby*, 74 U.S. 482, 486–87, 7 Wall. 482, 19 L.Ed. 278 (1868). What must be avoided is "[t]o adopt such a construction [as] would put a stop to the ordinary business of life. [ . . . ] If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity. The court must restrain the words." *Holy Trinity Church v. United States*, 143 U.S. 457, 460, 12 S.Ct. 511, 36 L.Ed. 226 (1892). Nevertheless, the Supreme Court has cautioned that courts should invoke the canon only "rarely ... to override unambiguous legislation." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 459, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). Ultimately, as Justice Kennedy has observed, "[T]his narrow exception to our normal rule of statutory construction does not intrude upon the lawmaking powers of Congress, but rather demonstrates a respect for the coequal Legislative Branch, which we assume would not act in an absurd way." *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 470, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring).

It would be absurd to hold that a plaintiff who is subject to debt collection efforts for an obligation that he does not owe is ineligible for the FDCPA's protections simply because he cannot characterize the nature of that obligation.

Such a holding is absurd because it would fail to restrain debt collectors from suing anyone, willy-nilly, whose name was similar to that of an alleged debtor.[4] It is difficult to conceive of a more *unfair* debt collection practice than dunning the wrong person. This is particularly true given studies showing that anywhere from 29% to well over 90% of debt collection lawsuits result in default judgments in favor of the debt collector or creditor. *See* Peter A. Holland, *Junk Justice: A Statistical Analysis of 4,400 Lawsuits Filed by Debt Buyers*, 26 Loyola Consumer L.Rev. 179 (2014). Given these statistics, it is quite likely that any given individual in plaintiff's position who is sued for an obligation (particularly one who cannot afford an attorney) would not appear in court and be adjudged liable for someone else's debt.

4. It is no answer to say that plaintiffs could seek redress in state court. Many states have not enacted legislation regulating debt collection practices. And, while California has codified the Rosenthal Act, that Act is similar to the FDCPA in addressing the collection of "consumer debt," *i.e.*, "transaction[s] between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person **primarily for personal, family, or household purposes**." Cal. Civ.Code § 1788.2(e) (emphasis added). In other words, a state court that chose to force plaintiffs to satisfy the Rosenthal Act's statutory text would compel similar absurdities to those discussed herein.

Plaintiff himself was adjudged in default until he retained counsel.

The law provides a variety of methods to collect on a judgment. To have one's wages garnished or one's bank account levied for a debt one does not owe would "put a stop to the ordinary business of life," *Holy Trinity Church,* 143 U.S. at 460, 12 S.Ct. 511, for almost anyone. Congress could not have intended such a result. And, in fact, as the Ninth Circuit has recognized, the FDCPA's legislative history makes clear that "Congress designed the Federal Act to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Swanson v. S. Or. Credit Serv.,* 869 F.2d 1222, 1225 (9th Cir.1988) (quoting S.Rep. No. 382, 95th Cong.2d Sess. at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699).

To sum, applying the canon against absurdities ensures that the FDCPA will "receive a sensible construction." *United States v. Kirby,* 74 U.S. 482, 486–87, 7 Wall. 482, 19 L.Ed. 278 (1868).

### D. Policies underlying the FDCPA

Sound policy reasons also counsel against placing the burden on the plaintiff as defendants urge. Because dunning the wrong person is among the most unfair of debt collection practices, the FDCPA should be interpreted in a manner that incentivizes debt collectors to ensure that they direct their efforts at the right person.

Requiring wrongly-targeted plaintiffs to prove the nature of the obligation being sought would have precisely the opposite effect.

In most such cases, plaintiffs lack any practical method to determine the nature of an underlying obligation. Such a determination would require the following steps:

1. Obtaining documents through discovery that memorialize the alleged obligation, *e.g.,* credit card statements or a promissory note. Since it is the end use of any purchases that determines whether the obligation was incurred for "personal, family, or household purposes," it is likely that the testimony of the person who incurred the debt would be required to characterize the proceeds' use.

2. Locating the person who actually incurred the obligation. The difficulty of this step should not be understated, given that debt collectors are in the business of locating debtors, and therefore (presumably) quite skilled at it. To require wrongly-dunned plaintiffs (or their attorneys) to be better at locating alleged debtors than debt collectors themselves is the quintessence of an absurdity.

3. Subpoenaing the actual obligee's testimony for deposition. Note that an individual who allegedly owes a debt, but has to date been left alone by debt collectors, is unlikely to voluntarily testify as to the composition of that debt. And even if the actual obligee is subject to the court's subpoena power, he or she may be able to quash the subpoena as unduly burdensome. *See* Fed. R. Civ. P. 45.[5]

Congress could not have intended to erect such hurdles.

---

**5.** Incidentally, if the court were to adopt defendant's reading of 15 U.S.C. § 1692a(5), then it would certainly have to deny the instant motion as premature. This action recently commenced and plaintiff has had no opportunity to conduct the arduous efforts that would be required to obtain documents from the alleged original creditor, locate the real "Larry Dean Davis" (an individual last known to be in Texas), and then compelling and conducting his deposition.

Finally, even this line of reasoning assumes that there actually is an underlying debt to collect. Debt collectors sometimes try to collect nonexistent debts. *See, e.g., Tourgeman v. Collins Financial Services, Inc.,* 755 F.3d 1109 (9th Cir.2014) ("According to Tourgeman, he completed repayment within two years of buying the computer. But Dell Financial's records reflected otherwise. Tourgeman's allegedly outstanding debt therefore was charged off and then sold, along with more than 85,000 other Dell Financial debts, to Collins Financial Services."); *Chiverton v. Fed. Fin. Grp., Inc.,* 399 F.Supp.2d 96, 99 (D.Conn.2005) ("The defendant told Chiverton that it had purchased the debt Chiverton owed to Fleet Bank and was trying to collect it. Chiverton again disputed the debt and informed the defendant that he had satisfied the debt in full. This time, Chiverton faxed the defendant copies of documents verifying that the debt was no longer outstanding."). And how are individuals to protect themselves from unscrupulous debt collectors who invent debts out of whole cloth? It may be months or years before law enforcement became aware of, and could halt, such activities.

In *Tourgeman,* the Ninth Circuit emphasized that, in enacting the FDCPA, "Congress intended to achieve its goal of regulating debt collectors' conduct by motivating consumers to bring enforcement actions if they are the targets of unlawful collection efforts." *Id.,* 755 F.3d at 1118. To exempt collection activities directed at the wrong individual from FDCPA coverage would undoubtedly undermine this goal. Ultimately, "[b]ecause the FDCPA ... is a remedial statute, it should be construed liberally in favor of the consumer." *Clark v. Capital Credit & Collection Servs. Inc.,* 460 F.3d 1162, 1176 (9th Cir. 2006) (quoting *Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir.2002)).

## IV. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (ECF No. 36) is DENIED.

IT IS SO ORDERED.