Filed 10/23/24; certified for publication 11/12/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LVNV FUNDING, LLC,<br><br>    Plaintiff and Respondent,<br><br>         v.<br><br>YOLANDA RODRIGUEZ,<br><br>    Defendant and Appellant. | F086904<br><br>(Super. Ct. No. 23CECG01294)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

Consumer Law Center, Fred W. Schwinn, Raeon R. Roulston, and Matthew C. Salmonsen, for Defendant and Appellant.

Yu Mohandesi, B. Ben Mohandesi and Lisa M. Lawrence, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

This case arises from the granting of a special motion to strike pursuant to Code of Civil Procedure sections 425.16 et seq., commonly known as an anti-SLAPP motion. Respondent LVNV Funding, LLC (LVNV) sued appellant Yolanda Rodriguez

(Rodriguez) in a debt collection action. Rodriguez cross-complained, (1) claiming she had been the victim of identity theft, and (2) that LVNV's debt collection action violated the federal Fair Debt Collection Practices Act (FDCPA) and its California counterpart, the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act).[1] After initial discovery, Rodriguez determined LVNV had sued the wrong Yolanda Rodriguez, because the debt LVNV was attempting to collect was incurred by a Yolanda Rodriguez with a different date of birth and Social Security number than hers. Once this was demonstrated to LVNV, it dismissed the suit. However, Rodriguez declined to dismiss her cross-claim, since the FDCPA and Rosenthal Acts are strict liability statutes, which penalize false or misleading debt collection actions unless they fit within a narrow "bona fide error" defense. LVNV filed an anti-SLAPP motion, which the trial court granted. Rodriguez now appeals from the trial court's order granting the motion.

For the reasons set forth below, we reverse the trial court's decision to grant the motion. The FDCPA creates a strict liability cause of action for attempts to collect a debt that misrepresent or falsely present the "character" or "amount" of a debt owed. Numerous federal courts from around the country have interpreted this language as allowing a cause of action for cases of mistaken identity, where a debt collector sues or otherwise attempts to collect a debt from the wrong person. The FDCPA was enacted in order to curb improper and abusive debt collection practices, and it does so by placing the onus on debt collectors to ensure they attempt to collect only legitimate debts from the

---

[1] Courts have noted that the Rosenthal Act largely mirrors the FDCPA. (See *Lal v. American Home Servicing, Inc.* (E.D.Cal. 2010) 680 F.Supp.2d 1218, 1224; *Best v. Ocwen Loan Servicing, LLC* (2021) 64 Cal.App.5th 568, 576 ["The Rosenthal Act … incorporates the FDCPA, so that a violation of the FDCPA is per se a violation of the Rosenthal Act."].) While the Rosenthal Act "is more extensive than the FDCPA," *Best, supra*, 64 Cal.App.5th at p. 576, neither party suggests the causes of action alleged here differ in any way from each other, and instead describe them as derivative claims. Since the analysis of the Rosenthal Act claim mirrors that of the FDCPA claim in this case, we do not separately discuss the Rosenthal Act here.

people who owe them. The legislative history of the FDCPA shows Congress was not merely concerned with misrepresentations during the attempted collection of valid debts, but also the attempted collection of debts from people who in fact owed no money at all. While there is a narrow affirmative defense for "bona fide" mistakes that a debt collector may avail themselves of to prevent liability under the FDCPA, there is no suggestion LVNV sought to or could demonstrate such a defense here. Therefore, we will remand this case for further appropriate proceedings.

## BACKGROUND

This matter originated with the filing of a complaint by LVNV on January 24, 2023,[2] for $3,627.30 in damages. Rodriguez was personally served with the complaint on February 5. Thereafter, she filed an answer and cross-complaint. The cross-complaint alleged three causes of action pursuant to Civil Code section 1798.92, the FDCPA, and the Rosenthal Act, respectively, and sought declaratory and injunctive relief, actual and statutory damages, and attorney fees. On May 9, LVNV dismissed its complaint without prejudice. Approximately a month later, on June 5, LVNV filed an anti-SLAPP motion to strike Rodriguez's cross-complaint, arguing Rodriguez could not establish a probability of prevailing on the merits of her FDCPA and Rosenthal Act claims because LVNV was merely mistaken in its effort to collect the debt from the wrong Yolanda Rodriguez.

The trial court concluded Rodriguez could not establish a probability of prevailing on the merits, because there was nothing false, deceptive, or misleading about the debt collection action. It found even the "least sophisticated debtor" would have recognized the address on the documentation attached to the complaint was not hers, and that there was "nothing inherently false about the complaint" merely because it was served on the

---

[2] Subsequent references to dates are to dates in 2023 unless stated otherwise.

3.

wrong Yolanda Rodriguez.  The court granted the anti-SLAPP motion via minute order on August 1.  Notice of appeal was timely filed.

## DISCUSSION

### A.  Standard of Review

"We review a trial court's ruling on a special motion to strike pursuant to [Code of Civil Procedure] section 425.16 under the de novo standard.  (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)  'In other words, we employ the same two-pronged procedure as the trial court in determining whether the anti-SLAPP motion was properly granted.'  (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1652.)"  (*Belen v. Ryan Seacrest Productions, LLC* (2021) 65 Cal.App.5th 1145, 1156 (*Belen*).)

"As always, 'our job is to review the trial court's ruling, not its reasoning.' (*People v. Financial Casualty & Surety, Inc.* (2017) 10 Cal.App.5th 369, 386.)  We consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'  ([Code Civ. Proc.,] § 425.16, subd. (b)(2).)  In considering the pleadings and declarations, we do not make credibility determinations or compare the weight of the evidence; instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)"  (*Belen, supra,* 65 Cal.App.5th at p. 1156.)

"When a party moves to strike a cause of action (or portion thereof) under the anti-SLAPP law, a trial court evaluates the special motion to strike by answering two questions:  (1) has the moving party 'made a threshold showing that the challenged cause of action arises from protected acitivity' (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056); and, if it has, (2) has the nonmoving party demonstrated that the challenged cause of action has ' "minimal merit" ' by making 'a prima facie factual showing sufficient to

4.

sustain' a judgment in its favor? (*Baral* [*v. Schnitt* (2016)] 1 Cal.5th 376, 384-385; see *Navallier v. Sletten* (2002) 29 Cal.4th 82, 93-94; see also [Code Civ. Proc.,] § 425.16, subd. (b)(1).) If the first prong is satisfied by the moving party, the burden then shifts to the nonmoving party to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Belen, supra,* 65 Cal.App.5th at p. 1157.)

In this case, we agree that the filing of the cross-complaint by Rodriguez was protected activity. However, we also hold that, for the reasons set forth below, Rodriguez has demonstrated that her claims have minimal merit, satisfying the second prong.

B. **FDCPA/Rosenthal Act**

The FDCPA is a consumer protection statute enacted "to eliminate abusive debt collection practices by debt collectors, to insure [sic] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." (15 U.S.C. § 1692, subd. (e).) It was enacted based on "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." (*Id.*, § 1692, subd. (a).) Both the FDCPA and its state counterpart, the Rosenthal Act, are strict liability statutes. (*Clark v. Capital Credit & Collection Services, Inc.* (9th Cir. 2006) 460 F.3d 1162, 1175 (*Clark*); *Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63, 91; *Aguilar v. Mandarich Law Group, LLP* (2023) 87 Cal.App.5th 607, 622 (*Aguilar*).) "[B]ecause the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors—repeat players likely to be acquainted with the legal standards governing their industry—to bear the brunt of the risk." (*Clark, supra,* 460 F.3d at p. 1171.)

As relevant to this case, the FDCPA prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection

of any debt."[3]  (15 U.S.C. § 1692e.)  This includes prohibiting the "false representation of … the character, amount, or legal status of any debt."  (15 U.S.C. § 1692e, subd. (2).)

There is substantial authority finding that attempts to collect debt based on a case of mistaken identity give rise to a cause of action under the FDCPA.  (*Swanson v. Southern Oregon Credit Service, Inc.* (9th Cir. 1988) 869 F.2d 1222, 1225 [the FDCPA was enacted to " 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid' "]; *Roe v. Roosen, Varchetti & Oliver, PLLC* (E.D. Mich. June 19, 2019) No. 18-CV-13536, 2019 WL 2523589, at *2 [noting "the legislative history of the FDCPA reveals that Congress was concerned with cases of mistaken identity and debt collectors trying to recover from the wrong persons"]; *Davis v. Midland Funding, LLC* (E.D. Cal. 2014) 41 F.Supp.3d 919, 925 (*Davis*) ["It is difficult to conceive of a more *unfair* debt collection practice than dunning the wrong person."]; *Bodur v. Palisades Collection, LLC* (S.D.N.Y. 2011) 829 F.Supp.2d 246, 254 (*Bodur*) ["District courts have found that 'an attempt to collect a debt from a non-debtor constitutes a "false representation" as to the character or status of the debt in violation of 1692e.' "]; *Johnson v. Bullhead Investments, LLC* (M.D.N.C. Jan. 11, 2010) No. 1:09CV639, 2010 WL 118274, at *6 ["the legislative history of the FDCPA shows that Congress clearly intended to protect people subject to harassment by debt collectors as a result of mistaken identity"]; *Wenrich v. Robert E. Cole, P.C.* (E.D. Pa. Dec. 22, 2000) No. CIV. A. 00-2588, 2001 WL 4994, at *3 [noting federal courts interpret the FDCPA as "a broad grant available to persons who are not obligated or allegedly obligated to pay the debt that the defendant sought to collect"].)

The number of cases holding similarly is vast, and federal courts generally allow claims under the FDCPA to proceed even when they are filed by individuals against

---

[3] LVNV concedes it is a debt collector and filed this case as a debt collection action, and thus, both the FDCPA and the Rosenthal Act apply to this case.

whom a debt collection attempt was being made based merely on a case of mistaken identity. (See, e.g., *McNaney v. American Collections Enterprise, Inc.* (D. Md. June 14, 2024) No. 1:23-cv-02396-JRR, 2024 WL 3013158, at *6; *Hakobyan v. Midland Credit Management, Inc.* (E.D.N.Y. Dec. 7, 2023) No. 22-cv-5609 (BMC), 2023 WL 8473947, at *2; *Franks v. Achievable Solutions, Inc.* (C.D. Cal. Jan. 29, 2021) No. SA CV 20-0977 FMO (DFMx), 2021 WL 3884281, at *3; *Boozer v. Enhanced Recovery Company, LLC* (E.D. Mich. Oct. 18, 2019) No. 17-cv-14190, 2019 WL 5295730, at *7; *Kayyal v. Enhanced Recovery Company, LLC* (N.D. Ill. Sept. 23, 2019) No. 17 CV 2718, 2019 WL 4601743, at *5; *Isaac v. RMB, Inc.* (N.D. Ala. July 18, 2014) No. 2:12–cv–2030–TMP, 2014 WL 3566069, at *5; *Velazquez v. NCO Financial Systems, Inc.* (E.D. Pa. May 31, 2011) No. 2:11–CV–00263, 2011 WL 2135633, at *5; *Stuart v. AR Resources, Inc.* (E.D. Pa. Mar. 16, 2011) No. 10–3520, 2011 WL 904167, at *4; *Valdez v. Capital Management Services, LP* (S.D. Tex. Nov. 16, 2010) No. B:09–246, 2010 WL 4643272, at *12; *Jeter v. Alliance One Receivables Management, Inc.* (D. Kan. May 20, 2010) No. 10–2024–JWL, 2010 WL 2025213, at *2; *Owens v. Howe* (N.D. Ind. Nov. 8, 2004) No. 1:04–CV–152, 2004 WL 6070565, at *11.) While not binding on us, given the vast number of federal cases holding this and the fact these courts were interpreting a federal law, we find them persuasive.

In support of this approach, federal courts have observed House Report 95-131, discussing the reasons for enacting the FDCPA, stated explicitly: "This bill also protects people *who do not owe money at all*. In the collector's zeal, collection effort[s] are often aimed at the wrong person either because of *mistaken identity* or mistaken facts. This bill will make collectors behave responsibly towards people with whom they deal." (*Dutton v. Wolhar* (D. Del. 1992) 809 F. Supp. 1130, 1134–1135, italics added.) Another court has noted the "Senate shared this concern, commenting that one of the purposes of the Act is to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.' "

(*Thompson v. CACH, LLC* (N.D. Ill. Oct. 24, 2014) No. 14 CV 0313, 2014 WL 5420137, at \*3.) LVNV's argument that "mistakenly filing a lawsuit against the wrong person is not … a violation" of the FDCPA has been repeatedly held to be incorrect. A debt collection action against a person who does not owe the debt but rather simply bears the same name as the debtor falsely represents the character or status of the debt. (See 15 U.S.C. § 1692e, subd. (2).)

This interpretation of the FDCPA is bolstered by the fact that the statute contains an express defense for certain debt collectors who can show "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." (15 U.S.C. § 1692k, subd. (c).) The "bona fide error" defense requires the debt collector to show they "(1) violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid the violation." (*Urbina v. National Business Factors Inc.* (9th Cir. 2020) 979 F.3d 758, 763.) The third criteria means a "debt collector is not entitled under the FDCPA to sit back and wait until a creditor makes a mistake and then institute procedures to prevent a recurrence. To qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors[.]" (*Reichert v. National Credit Systems, Inc.* (9th Cir. 2008) 531 F.3d 1002, 1007.)

Here, upon an appropriate showing, LVNV could establish its suit against Rodriguez was a "bona fide error" and thus avoid liability under the statute. Whether such a defense would ultimately prevail is beyond the scope of this appeal, as LVNV did not raise or seek to prove any aspect of this affirmative defense in its anti-SLAPP motion. (See, e.g., *Paredes v. Credit Consulting Services, Inc.* (2022) 82 Cal.App.5th 410, 438 [discussing evaluation of affirmative defenses in second prong of anti-SLAPP analysis]; *Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 683.) However, the fact the statute

provides for such a defense indicates cases of mistaken identity *are* generally actionable under the FDCPA, as there would otherwise be no need to include such a defense.

LVNV argues, as the trial court found, that the "least sophisticated debtor" would not be confused in the situation presented here, because Rodriguez should have noticed the address on the documents attached to the complaint was not her address. We are not convinced. Analyzing whether the debt collector's conduct might mislead the consumer is an objective inquiry that looks to whether the " ' " 'least sophisticated debtor would likely be misled by a communication.' " ' " (*Aguilar, supra*, 87 Cal.App.5th at p. 622.) "The 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.' " (*Gonzales v. Arrow Financial Services, LLC* (9th Cir. 2011) 660 F.3d 1055, 1061.) "The standard is 'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naive,' particularly when those individuals are targeted by debt collectors." (*Id.* at 1062.) "At the same time, the standard 'preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care,' " and does not create liability based on interpretations that are "bizarre," "idiosyncratic," or "peculiar." (*Ibid.*)

The trial court found, and LVNV argues, that the least sophisticated debtor being served with a lawsuit apparently filed against them would not be misled where the attached documents indicate the named defendant is affiliated with an address to which the served person knows they have no relation. This is not a fair or accurate assessment. As Rodriguez notes, the act of being served with a summons and complaint is one of jurisdictional significance. "A summons is the process by which a court acquires personal jurisdiction over a defendant in a civil action." (*MJS Enterprises, Inc. v. Superior Court* (1984) 153 Cal.App.3d 555, 557.) " ' "Service of process is the means by which a court having jurisdiction over the subject matter asserts its jurisdiction over the party and brings home to him reasonable notice of the action." ' " (*Rockefeller*

9.

*Technology Investments (Asia) VII v. Changzhou SinoType Technology Co. Ltd.* (2020) 9 Cal.5th 125, 139.) Service performs "two important functions. From the court's perspective, service of process asserts jurisdiction over the person," and it "protects a defendant's due process right to defend against an action by providing constitutionally adequate notice of the court proceeding." (*Ibid.*)

Understood as an act of jurisdictional significance, service of a summons and complaint on Yolanda Rodriguez means defendant and cross-complainant Rodriguez— i.e., the person who was served—*is* the defendant in the case. The court has jurisdiction over *this* Yolanda Rodriguez. It does not have jurisdiction over any other people named Yolanda Rodriguez. That jurisdiction exists whether the person served is the Yolanda Rodriguez who, in fact, owes the debt. The Yolanda Rodriguez who was served is the one being publicly accused of shirking her debts, and must now appear and defend the case. Indeed, it is that Yolanda Rodriguez against whom default judgment will be entered if she does not appear, and who can then be subject to further proceedings to collect the debt now reduced to a judgment by way of default. It is not only the least sophisticated consumer that would reasonably understand from being served with a lawsuit that she is being accused of owing the debt at issue in the complaint: every reasonable attorney and jurist would understand that as well. That is the meaning and effect of serving a summons and complaint on someone bearing the name of the defendant in the case. The served defendant must now appear and defend the matter, or risk a default judgment being asserted against them. It would be unreasonable to suggest a consumer in such circumstances could simply ignore a court summons.

Numerous courts have found that suing the wrong person over a debt is actionable under the FDCPA, as discussed *supra*, because " 'an attempt to collect a debt from a non-debtor constitutes a "false representation" as to the character or status of the debt in violation of 1692e.' " (*Bodur, supra,* 829 F.Supp.2d at p. 254.) It is hard to imagine a more unfair and misleading debt collection activity than actually *suing* an innocent

10.

person who happens to share the same name as another debtor. (*Davis, supra,* 41 F.Supp.3d at p. 925.) This exceeds the misleading effects of sending a letter or making a telephone call to the accused debtor, and is substantially more likely to be taken seriously and to compel a response.

We understand there are a few courts that have found differently. (See, e.g., *Hedayati v. Perry Law Firm* (C.D. Cal. Oct. 27, 2017) No. SA CV 16–0846–DOC (DFMx), 2017 WL 4864491, at *7 (*Hedayati*) [finding "[e]ven the least sophisticated debtor knows his own address and can understand that, if he receives debt collection notices that list an address he doesn't recognize and a name similar to his own, that the debt collector likely has the wrong individual"].) Setting aside that the significant weight of authority lies against this analysis, we simply find this unpersuasive.[4] Even if the least sophisticated debtor knows they have not lived at one address listed for the defendant of a lawsuit, they also know that by being served with a lawsuit, *they* are the one being accused, *they* must defend the suit, and *they* will be subject to an adverse judgment if they do not. Service of that process is misleading, because it falsely represents the character and status of the debt, namely, by accusing someone who is not the debtor of owing money. It also attaches significant legal and practical consequences to that accusation. (See *Davis, supra,* 41 F.Supp.3d at p. 925 [noting "studies show[ ] that anywhere from 29% to well over 90% of debt collection lawsuits result in default judgments in favor of the debt collector or creditor"].)

We also note the plaintiff's burden in the second prong of an anti-SLAPP analysis "is not high; the plaintiff need only establish that the claims have ' "minimal merit." ' " (*Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 43.) Given the significant authority above finding strict liability FDCPA claims can be stated based on cases of merely

---

**4** It bears noting that the court in *Hedayati* also found the defendant debt collector had proven the bona fide error defense. (*Hedayati, supra*, 2017 WL 4864491, at *8–9.)

mistaken identity, we find Rodriguez's FDCPA and Rosenthal Act claims have at least minimal merit. Accordingly, we conclude the trial court erred in concluding Rodriguez could not show a probability of succeeding on the merits.

## DISPOSITION

The order granting LVNV's anti-SLAPP motion is reversed, and this case is remanded for further proceedings not inconsistent with this opinion. Rodriguez shall recover costs on this appeal.


SNAUFFER, J.

WE CONCUR:


PEÑA, Acting P. J.


SMITH, J.

12.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LVNV FUNDING, LLC, <br><br>     Plaintiff and Respondent, <br><br>       v. <br><br> YOLANDA RODRIGUEZ, <br><br>     Defendant and Appellant. | F086904 <br><br> (Super. Ct. No. 23CECG01294) <br><br> **ORDER GRANTING REQUESTS FOR PUBLICATION** |

As the nonpublished opinion filed on October 23, 2024, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

Snauffer, J.

WE CONCUR:

Peña, Acting P.J.

Smith, J.