**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JON E. FRUDDEN, as parent and
guardian of his minor children John
Doe and Jane Doe,

*Plaintiff-Appellant*,

v.

KAYANN PILLING, individually, and
in her official capacity as the
Principal of Roy Gomm Elementary
School and as an executive director
of the Roy Gomm Elementary
School Parent-Faculty Association,
Inc; ROY GOMM ELEMENTARY
SCHOOL PARENT-FACULTY
ASSOCIATION, INC.; HEATH
MORRISON, Ph.D., individually and
in his official capacity as the
Washoe County School District
Superintendent; LYNN RAUH,
individually and in her official
capacity as the Area Superintendent
of the office of School Performance
for the Washoe County School
District; WASHOE COUNTY SCHOOL
DISTRICT,

*Defendants-Appellees*.

No. 15-15448

D.C. No.
3:11-cv-00474-
RCJ-WGC

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted February 17, 2017
San Francisco, California

Filed December 11, 2017

Before:  William A. Fletcher, Julio M. Fuentes,[*]
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge W. Fletcher

**SUMMARY**[**]

**Civil Rights**

The panel affirmed the district court's grant of summary judgment to individual defendants and reversed the district court's grant of summary judgment to institutional defendants, and remanded in an action challenging, on First Amendment grounds, an elementary school's uniform policy.

Plaintiff challenged a school uniform that required his children to wear shirts or sweatshirts with a logo consisting

---

[*] The Honorable Julio M. Fuentes, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

of the name of the school, a stylized picture of a gopher (the school mascot), and the motto "Tomorrow's Leaders." An exemption from the policy allowed students to wear the uniform of a nationally recognized youth organization on regular meeting days of that organization. In a prior appeal, a three-judge panel held that the district court should have analyzed the motto requirement and the exemption under strict, rather than intermediate, scrutiny and reversed the district court's decision and remanded. *Frudden v. Pilling* (*Frudden II*), 742 F.3d 1199, 1204–05 (9th Cir. 2014). On remand, the district court granted summary judgment in favor of defendants.

On appeal from the district court's summary judgment, the panel disagreed with the prior panel that reversed and remanded the district court's decision in *Frudden II*. The panel believed that intermediate rather than strict scrutiny should be applied to the uniform policy. The panel's sua sponte en banc call to reverse the prior decision, however, failed to receive a majority vote of the active members of the Court. Given the failure of the en banc call, the panel considered itself bound by the holding of the prior three-judge panel. So bound, the panel held that the uniform policy—both the motto requirement and the exemption—violated the First Amendment. The panel held that although there can hardly be interests more compelling than fostering children's educational achievement and providing a safe and supportive educational environment, requiring students to display the motto "Tomorrow's Leaders" on their school uniforms was not narrowly tailored to serve those interests. The exemption for the uniforms of nationally recognized youth organizations also failed strict scrutiny.

The panel held that the individual defendants were entitled to qualified immunity because the applicable law was not sufficiently clear to put them on notice that the uniform policy would violate the First Amendment.  However, because the institutional defendants were not individuals, they were not protected by qualified immunity.

**COUNSEL**

Mary Frudden (argued), Reno, Nevada, for Plaintiff-Appellant.

Sara K. Almo (argued), Christopher B. Reich, and Neil A. Rombardo, Washoe County School District, Reno, Nevada, for Defendants-Appellees.

Eugene Volokh (argued), Attorney; Michael Newborn, Melanie Rollins, Sina Safvati, Anjelica Sarmiento and Nicholas Goshgarian, Law Students; Scott & Cyan Banister First Amendment Clinic, UCLA School of Law, Los Angeles, California, for Amicus Curiae Student Press Law Center.

**OPINION**

W. FLETCHER, Circuit Judge:

In July 2011, Mary and Jon Frudden brought suit against officials and entities associated with the Roy Gomm Elementary School ("RGES") and the Washoe County School District ("WCSD") in Nevada. The Fruddens challenged on First Amendment grounds a school uniform policy that required their two minor children to wear shirts or sweatshirts with a logo consisting of the name of the school, a stylized picture of a gopher (the school mascot), and the motto "Tomorrow's Leaders." An exemption from the policy allowed students to wear the uniform of a nationally recognized youth organization on regular meeting days of that organization. The district court applied intermediate scrutiny and upheld the RGES uniform policy. In February 2014, a three-judge panel of this court reversed and remanded on the ground that the district court should have analyzed the motto requirement and the exemption under strict, rather than intermediate, scrutiny. *Frudden v. Pilling* (*Frudden II*), 742 F.3d 1199, 1204–05 (9th Cir. 2014).

This case comes before us following the district court's award on remand of summary judgment against the Fruddens. Defendants-Appellees are KayAnn Pilling, Heath Morrison, and Lynn Rauh ("Individual Defendants"), the Roy Gomm Elementary School Parent-Faculty Association, Inc. ("PFA") and WCSD ("Institutional Defendants"). Jon Frudden is now the sole Plaintiff-Appellant on behalf of his two children. Mary Frudden, an attorney, is now counsel of record. The Frudden children no longer attend RGES, and prospective relief is no longer at issue.

Our three-judge panel disagrees with the three-judge panel that reversed and remanded the district court's decision in *Frudden II*. We believe that intermediate rather than strict scrutiny should be applied to the RGES uniform policy. In an attempt to reverse the decision of the first panel, we made a *sua sponte* en banc call. The call failed to receive a majority vote of the active members of our court.

Given the failure of our en banc call, we consider ourselves bound by the holding of the prior three-judge panel. So bound, we hold that the uniform policy—both the motto requirement and the exemption—violate the First Amendment. We further hold that the Individual Defendants are entitled to qualified immunity because the applicable law was not sufficiently clear to put them on notice that the uniform policy would violate the First Amendment. However, because the Institutional Defendants are not individuals, they are not protected by qualified immunity.

We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

In the fall of 2009, the Fruddens' two minor children enrolled at Roy Gomm Elementary School, a K-6 public school in Reno, Nevada. At a welcoming event that fall, WCSD Superintendent Dr. Heath Morrison asked the RGES Parent-Faculty Association ("PFA") to help improve students' test scores. Mimi Butler, President of the PFA, believed that school uniforms would help achieve that goal. Specifically, she believed that school uniforms would help students "learn how to 'dress for success' and focus on schoolwork rather than their clothing," and would "help even

the playing field for those students who could not afford expensive clothes." RGES Principal KayAnn Pilling shared Butler's view that a uniform policy would help improve test scores. Pilling believed that uniforms would also help mitigate wealth-based bullying facilitated or encouraged by differences in clothing worn by students at RGES. Among the students Pilling sought to protect were those in a special education program, many of whom participated in a free or reduced-cost lunch program.

With Butler and Pilling's support, in the spring of 2010 the PFA began discussing the merits of a uniform policy. A proposal for mandatory uniforms failed to garner the necessary two-thirds support of the PFA in May. School officials revived the proposal the following year. At that point, Mary Frudden began attending PFA meetings to express her strong opposition to mandatory school uniforms. Over Mary Frudden's objections, the PFA approved a mandatory school uniform policy in May 2011.

That same month, RGES mailed to parents a four-page document describing the new uniform policy for the 2011-2012 school year. The document described the policy's main purpose as "establish[ing] a culture of 'one team, one community' " at RGES by "foster[ing] school spirit and unity, as well as a disciplined and safe learning environment." Under the policy, students were required to wear either a red or a navy polo-style shirt or sweatshirt. The shirts and sweatshirts were available for purchase through the school. The shirts cost $7.00 each ($9.00 for XXL); the sweatshirts cost $9.00 each ($11.00 for XXL). The school provided three uniform shirts free of charge "to each enrolled student who is experiencing financial hardship." "Uniform bottoms"—"long pants, capri-length pants, jumpers, skirts, skorts or

shorts"—were required to be "khaki or tan in color" and could be purchased "from a location of choice." There were several exemptions from the uniform requirement: (1) "When a student wears a uniform of a nationally recognized youth organization such as Boy Scouts or Girl Scouts on regular meeting days"; (2) "On days designated as 'free dress/spirit wear' days"; (3) "Field trips that are designated by specific teachers as 'free dress' field trips"; and (4) "When a student is on campus outside of normal school hours." The policy included a system of escalating sanctions to enforce the uniform policy.

Uniform shirts and sweatshirts had a small logo on the front. Written at the bottom of the logo, in capital letters, was "ROY GOMM ELEMENTARY SCHOOL." "ROY GOMM" was in large letters; "ELEMENTARY SCHOOL" was in small letters. In the middle of the logo was a stylized picture of the school mascot, a gopher. The motto "TOMORROW'S LEADERS" was written in small capital letters above the gopher, in an arching semi-circle.

The Frudden children, a third-grade girl and a fifth-grade boy, began the 2011–2012 school year on August 29. Mary and Jon Frudden had filed a pro se suit challenging the uniform policy the month before. For the first two weeks of school, the children did not wear the required uniform. Principal Pilling then sent an e-mail to Mary Frudden:

> I am taking another opportunity to try to reach out to you and to establish a cooperative working relationship with you in regards to the uniform issue and your children. . . .

As we come to the end of our second week of school, we are also coming to the end of the grace period for being non-compliant with the uniform dress code policy. It is my greatest desire not to have to follow the outlined steps of our policy in regards to insubordination when dealing with your children next week. I am very fond of your children. I am still hopeful that you will be willing to meet with me and to work out an alternative situation that does not impact your children and put them in a position of having consequences at school. . . .

I am again extending you an invitation to meet with me to discuss the uniform issue. I know that you have not been willing to talk to me in the past, but the situation is now becoming critical in terms of not putting your children in the middle of a situation that will result in consequences for them for being insubordinate if they refuse to wear a uniform next week.

After receiving the email, Mary Frudden sent her children to school wearing American Youth Soccer Organization ("AYSO") uniforms of black shorts and shirts with the AYSO logo on the front. The prior three-judge panel recounted:

AYSO is a nationally recognized youth organization which regularly meets at least Monday through Friday. . . . Mary Frudden informed school principal KayAnn Pilling that

her children were wearing uniforms that fell within the written exemption to the policy.

Pilling told Frudden that the exemption did not apply because the children had neither a meeting nor soccer practice that day. Frudden protested to Debra Biersdorff, the Area Superintendent for the Office of School Performance. Biersdorff agreed with Pilling and said that Pilling could remove a student to compel compliance with the uniform policy. Pilling then called Frudden's son into her office and asked him to change. He agreed and changed into a loaner shirt that Pilling provided. Later, Frudden's daughter likewise changed into the school uniform.

The following day, . . . the Frudden children again wore AYSO uniforms to school. Once again, Pilling removed the children from class and asked them to change. Both children agreed to change clothes, although Frudden's son stated that he did not want to do so. The next day, . . . Frudden's son wore his RGES uniform shirt inside-out so that the logo was not visible. He turned his shirt right-side-out after he was called into Pilling's office and requested to do so.

*Frudden II*, 742 F.3d at 1202.

## II.  Procedural History

### A.  *Frudden I and II*

The Fruddens' First Amended Complaint, filed October 18, 2011, alleged *inter alia* that the school district and various individuals, including Principal Pilling and Superintendent Morrison, had violated their childrens' First Amendment rights.  The focus of their complaint was the uniform requirement in general, not the motto in the logo.  The Fruddens sought relief under 42 U.S.C. § 1983.

On January 31, 2012, the district court granted the defendants' motion to dismiss.  *Frudden v. Pilling*, 842 F. Supp. 2d 1265, 1273–74 (D. Nev. 2012) (*Frudden I*).  The court relied on our decision in *Jacobs v. Clark County School District*, 526 F.3d 419, 434 –38 (9th Cir. 2008), in which we upheld a Clark County, Nevada, public school policy that required students to wear "solid khakicolored bottoms and solid-colored polo, tee, or button-down shirts . . . with or without [school] logos."  On the ground that such a uniform requirement was content-neutral, we applied intermediate scrutiny and upheld the mandatory public school uniform policy.  *Id.* at 436–37.

On February 14, 2014, a three-judge panel of this court reversed.  *Frudden II*, 742 F.3d at 1201.  The panel held that, unlike the content-neutral uniforms at issue in *Jacobs*, RGES's mandatory uniform policy contained two features that merited strict rather than intermediate scrutiny.

First, the Fruddens argued that the motto "Tomorrow's Leaders" "convey[ed] two viewpoints—that leadership should be celebrated (or at least valued above being a

follower); and that RGES is, in fact, likely to produce '[t]omorrow's leaders.' " *Frudden II*, 742 F.3d at 1204. The panel agreed and concluded that the requirement that students wear polo shirts with the motto "Tomorrow's Leaders" was not "meaningfully distinguishable from the State of New Hampshire's inclusion of the motto 'Live Free or Die' on its license plates." *Id.* at 1205; *see Wooley v. Maynard*, 430 U.S. 705 (1977). The panel wrote:

> Practically speaking, RGES compels its students 'to be an instrument' for displaying the RGES motto. Had the RGES uniforms consisted of plaincolored tops and bottoms, as in *Jacobs*, RGES would have steered clear of any First Amendment concerns. However, by mandating the written motto on the uniform shirts, the RGES policy compels speech under *Wooley*.

*Frudden II*, 742 F.3d at 1205.

Second, the Fruddens argued that the exemption from the policy for uniforms of "nationally recognized youth organizations such as the Boy Scouts and Girl Scouts on regular meeting days" was not content-neutral. Relying on *Carey v. Brown*, 447 U.S. 455 (1980), in which the Supreme Court struck down a statute giving favorable treatment to labor picketing, the panel agreed. It wrote:

> Similarly [to *Carey v. Brown*], the language of the RGES policy's exemption favors the uniforms of certain youth organizations over all other clothing that the students may choose to wear in the absence of the exemption.

> Further, the exemption explicitly favors the uniforms of the Boy Scouts and Girl Scouts over all other uniforms (e.g., those of the AYSO), and favors the uniforms of "nationally recognized" youth organizations over those of locally or regionally recognized youth organizations.

*Id.* at 1206.

The panel remanded to the district court, ordering it to apply strict scrutiny to the motto requirement and to the exemption for uniforms of nationally recognized youth organizations. With respect to "Tomorrow's Leaders," the panel wrote that to survive strict scrutiny the motto must be "a narrowly tailored means of serving a compelling state interest." *Id.* at 1207 (citation omitted). With respect to the exemption for other uniforms, it wrote that "it is axiomatic that we 'apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content.' " *Id.* (citation omitted).

## B. Remand

On remand from this court, Mary Frudden withdrew as a named plaintiff and became counsel of record. On April 8, 2014, Jon Frudden, now the sole plaintiff suing on behalf of the Frudden children, filed a Second Amended Complaint against the Individual Defendants, PFA, and WCSD. The complaint sought injunctive relief, damages, and attorney's fees under 42 U.S.C. § 1983.

In June 2014, the WCSD Board of Trustees adopted a new policy under which school uniforms could have a logo

containing a school name and mascot but "[n]o other language . . . not specific to the school name and mascot." The new policy prohibited uniform policies that included "[c]ontent-based exceptions" such as "[t]eam clothing" or "[u]niforms of outside organizations." On June 16, the new principal of RGES sent a letter to parents advising them to purchase new school uniforms that complied with the new policy. Consistent with the new policy, RGES uniforms no longer include the motto "Tomorrow's Leaders."

On February 10, 2015, the district court granted summary judgment to defendants. *Frudden v. Pilling* (*Frudden III*), Case No. 3:11–cv–00474–RCJ–VPC (D. Nev.). The court held that the claim for prospective relief was moot. With respect to damages, the court held that the Individual Defendants were entitled to qualified immunity because there was no "clearly established right against the compelled wearing of a school motto on an elementary school uniform or against a uniform exception for nationally recognized youth organizations." With respect to the Institutional Defendants, who were not entitled to qualified immunity, the court held that the "Tomorrow's Leaders" motto requirement was narrowly tailored to a compelling state interest and therefore survived strict scrutiny. The court did not reach the question whether the policy's exemption for other uniforms satisfied strict scrutiny, on the ground that the Frudden children "suffered no damages as a result of the previous content-based exemption."

Jon Frudden timely appealed.

### III.  Standard of Review

We review the district court's grant of summary judgment de novo.  *Evanston Ins. Co. v. OEA, Inc.*, 566 F.3d 915, 918 (9th Cir. 2009).  Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

### IV.  Discussion

The parties agree that the claim for prospective relief is moot.  The claim for damages, however, is not moot.  We address the damages issue in three parts.  First, we ask whether the required wearing of the uniform with the logo containing the motto "Tomorrow's Leaders," and the exemption for uniforms of nationally recognized groups, violate the First Amendment.  Second, we ask whether the Individual Defendants are entitled to qualified immunity. Third, we briefly address damages against the Institutional Defendants.

### A.  First Amendment

The three-judge panel in *Frudden II* held that the motto "Tomorrow's Leaders" required as part of the logo on the school uniform, as well as the exemption for uniforms of nationally recognized youth organizations, are subject to strict scrutiny.  We disagree with the conclusion that strict rather than intermediate scrutiny applies, but we consider ourselves bound by the conclusion of the earlier panel.

## 1. "Tomorrow's Leaders" Motto

Under strict scrutiny, speech limitations may be upheld only "if they are narrowly tailored to serve a compelling interest." *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1664–65 (2015). "The State must specifically identify an 'actual problem' in need of solving, and the curtailment of free speech must be actually necessary to the solution." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011) (internal citation omitted). We conclude that the motto "Tomorrow's Leaders" cannot withstand strict scrutiny.

Defendants identify two governmental interests served by the motto: promoting student achievement; and preventing bullying or distractions arising out of differences in students' socioeconomic backgrounds that, in the absence of a required uniform, would be reflected in their clothing. Circuit courts are in general agreement that such goals constitute "important interests" when applying intermediate scrutiny. *See Jacobs*, 526 F.3d at 435 (holding that the government's stated goals of increasing student achievement, promoting safety, and enhancing a positive school environment "unquestionably qualify as 'important' "); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 391 (6th Cir. 2005) (designating the goals of "bridging socio-economic gaps between families," "focusing attention upon learning," and "improving test scores" as "important governmental interests"); *Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 443 (5th Cir. 2001); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275 (5th Cir. 2001).

We have found no direct authority on the question whether Defendants-Appellees' stated interests qualify as compelling (not merely important) governmental interests,

but conclude that they do so qualify. There can hardly be interests more compelling than fostering children's educational achievement and providing a safe and supportive educational environment. However, we reluctantly conclude that requiring students to display the motto "Tomorrow's Leaders" on their school uniforms is not narrowly tailored to serve those interests.

Defendants argue that the motto "Tomorrow's Leaders" promotes student achievement, but they provide no specific explanation of how this motto and student achievement are connected. The relationship between the challenged motto and student achievement is somewhat attenuated. To the extent that a logo on a required school uniform does promote student achievement, narrow tailoring that would result in the replacement of a content-based motto by a content-neutral motto would hardly lessen the otherwise beneficial impact of the uniform and logo.

Defendants further argue that the motto was necessary to prevent wealth-based bullying, on the ground that the alternative was a uniform requirement that would have permitted wealthier students to buy and to wear costlier, brand-name versions of polo shirts. Defendants contend that some kind of logo was necessary to obscure or eliminate a brand name that would otherwise have appeared on the polo shirts. This strikes us as extremely unlikely as a factual matter. The school could have required (indeed, the record suggests that the school may actually have required) purchase of polo shirts through the school. If the policy required that polos be purchased through the school, the school could almost certainly have obtained and made available for sale only polo shirts that had no brand names attached. But even in the extremely unlikely event that mandatory logos were the

only means by which brand names could have been eliminated, there was no need to include the motto "Tomorrow's Leaders" in the logo to accomplish this purpose.

## 2. Uniforms of Nationally Recognized Youth Groups

RGES's exemption for the uniforms of nationally recognized youth organizations also fails strict scrutiny. The district court concluded that it did not need to reach this question because, in its view, the children "suffered no damages as a result of the previous content-based exemption." The court erred in concluding, on the ground that because no actual damages were suffered, that it was unnecessary to reach the merits of Frudden's claim. "When a plaintiff alleges violation of a constitutional right, the Supreme Court has held that, even if compensatory damages are unavailable because the plaintiff has sustained no 'actual injury' . . . nominal damages are nonetheless available in order to 'make the deprivation of such right actionable' and to thereby acknowledge the 'importance to organized society that the right be scrupulously observed.' " *Jacobs*, 526 F.3d at 426 (quoting *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (internal brackets omitted). We therefore reach the merits of Frudden's claim.

The PFA explained in an answer to an interrogatory that it adopted the exemption because it "was consistent with other uniform policies at schools around the country, and would also make planning easier for the students and their parents who had meetings immediately after school, so they didn't have to worry about bringing two sets of clothing." We conclude that these two interests—consistency with the policies of other schools, and student and parental

convenience—are not compelling. They are self-evidently less significant than interests the Supreme Court has previously found to be compelling, such as combating terrorism, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28–29 (2010), or preventing voter fraud, *Burson v. Freeman*, 504 U.S. 191, 198–99 (1992) (plurality opinion). We therefore conclude, in applying strict scrutiny, that the exemption for uniforms of other organizations violated the First Amendment.

### 3. Our Disagreement with the Result We Are Required to Reach

Though we are required to apply the law as articulated by the prior panel in this case, we do not agree with it. In our view, the prior panel failed to distinguish properly between public and nonpublic fora. Just as important, it failed to apply common sense.

The state "may limit expressive activity in nonpublic fora if the limitation is reasonable and not based on the speaker's viewpoint." *See DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 965 (9th Cir. 1999). Unless a public school opens up its facilities for "indiscriminate use by the general public," "no public forum has been created, and school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community." *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) (internal quotation marks omitted).

The prior panel concluded that the constitutionality of the motto "Tomorrow's Leaders" was controlled by *Wooley v. Maynard*, in which the Supreme Court struck down under the First Amendment a requirement that New Hampshire drivers

display the statement "Live Free or Die" on their license plates. We disagree with the panel for two reasons. First, the required speech in *Wooley* was speech by driving-age adults in a public forum rather than speech by students in the non-public forum of an elementary school. Second, "Live Free or Die" was a political, content-based statement; "Tomorrow's Leaders" is not such a statement.

According to the prior panel, the motto "Tomorrow's Leaders" is subject to strict scrutiny because its viewpoint celebrates leadership at the expense of those who are followers. Anodyne, feel-good statements such as "Tomorrow's Leaders" are common in public schools. A number of mottos would be subject to strict scrutiny and struck down under the panel's rationale. What about a motto "We Succeed Together"? Some students are loners. What about "School Pride"? Some students are not proud of their school. What about "Stand Tall"? Some students are short. To subject such mottos to strict scrutiny makes no sense.

If mandatory school uniforms, including a motto "Tomorrow's Leaders," are subject only to intermediate scrutiny, we see no reason to subject to strict scrutiny an exemption for uniforms for recognized organizations to which students may belong. To jeopardize such a wide-spread and inoffensive practice similarly makes no sense.

However, given currently governing circuit law, we follow the holding of the prior panel.

### B. Individual Defendants and Qualified Immunity

#### 1. Waiver

Frudden contends that the Individual Defendants waived their qualified immunity by failing to plead it in their Answer to the Second Amended Complaint. We disagree.

Qualified immunity is an affirmative defense that the government has the burden of pleading and proving. *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). In their Answer to Frudden's Second Amended Complaint, Defendants' Seventh Affirmative Defense stated that because their "actions and/or omissions constituted the exercise or performance of a discretionary function," they were "entitled to immunity." While a more explicit invocation of qualified immunity would have been preferable, any deficiency (assuming there was one) was cured when the Individual Defendants explicitly raised and argued qualified immunity in their Motion for Summary Judgment. *See Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) ("In the absence of a showing of prejudice, . . . an affirmative defense may be raised for the first time at summary judgment.").

#### 2. Clearly Established Law

We apply a two-part analysis in qualified immunity cases. *Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016). First, we "decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, we "decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* A right is clearly established for purposes of qualified immunity only where

"[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Dunn v. Castro*, 621 F.3d 1196, 1200 (9th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The two prongs of the qualified immunity test need not be addressed in the order stated; we may "exercise . . . discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

For the reasons stated above, we conclude that the Individual Defendants violated the First Amendment and that they therefore fail the first prong of the qualified immunity analysis. The remaining question is whether they satisfy the second prong.

We begin with the motto "Tomorrow's Leaders." In *Jacobs v. Clark County School District*, 526 F.3d 419 (9th Cir. 2008), we upheld a public school uniform requirement. We concluded that "allowing students' otherwise solid-colored clothing to contain a school logo—an item expressing little, if any, genuine communicative message—does not convert a content-neutral school uniform policy into a content-based one." *Id.* at 433. Applying intermediate scrutiny, we upheld the uniform policy because it advanced the important state interest of fostering conducive learning environments for children, was unrelated to the suppression of free expression, and left open ample alternative channels for student communication. *Id.* at 435–38. The only difference between the uniforms in *Jacobs* and those at issue in this case is that RGES uniforms included as part of the logo the motto "Tomorrow's Leaders."

Frudden and *amicus* argue that at the time Defendants acted clearly established law under *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943), and *Wooley v. Maynard*, made it clear that they were violating the First Amendment. In *Barnette*, the Supreme Court held unconstitutional a law requiring public school students to salute the flag and recite the Pledge of Allegiance. 319 U.S. at 628–29. Relying on *Barnette*, the Court held in *Wooley* that New Hampshire could not require its drivers to display the state motto, "Live Free or Die," on their license plates. 430 U.S. at 715–17.

While *Barnette* and the present case both involve public schools, "Tomorrow's Leaders" is not analogous to the Pledge of Allegiance. The former is an anodyne phrase printed on a shirt or sweatshirt, while the latter is a compelled oral recitation pledging fidelity to national unity (in its current form, to national unity "under God"). Further, while *Wooley* and the present case both involve printed words, the cases are not analogous. The motto "Tomorrow's Leaders" has little if any substantive content and was displayed on a uniform only in a school setting. In contrast, "Live Free or Die" has obvious political content and is publicly displayed everywhere a vehicle is driven. Thus, it can hardly be maintained that these two cases clearly establish that the motto "Tomorrow's Leaders" violates the First Amendment. Stated otherwise, existing precedent had not "placed the . . . constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

The exemption for uniforms of other organizations fares no better. In holding that the exemption required the application of strict scrutiny, the prior three-judge panel relied only on *Carey v. Brown*, 447 U.S. 455, 457 (1980), in

which the Supreme Court held that a statute prohibiting residential picketing was unconstitutional because it exempted "peaceful picketing of a place of employment involved in a labor dispute." The Court was troubled by the fact that "[t]he permissibility of residential picketing under the Illinois statute [was] dependent solely on the nature of the message being conveyed." *Id.* at 461. The prior panel concluded that *Carey* controlled this case because RGES's uniform policy "favors the uniforms of certain youth organizations over all other clothing that the students may choose to wear." *Frudden II*, 742 F.3d at 1206.

In *Carey*, the regulation at issue privileged particular views in a public forum—specifically, streets and sidewalks—where First Amendment protections are highest. *See* 447 U.S at 460. In contrast, public schools are generally non-public forums, *see Hazelwood* 484 U.S. at 267, and public school students' First Amendment rights are "not automatically coextensive with the rights of adults in other settings." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986). Further, picketing by adults is strikingly dissimilar from school children wearing a shirt or sweatshirt with a motto such as "Tomorrow's Leaders." *Carey* thus did not place "beyond debate" the issue in our case. *Ashcroft v. Al-Kidd*, 563 U.S. at 741.

We therefore conclude that the Individual Defendants are entitled to qualified immunity.

## C.  Institutional Defendants

The Parent-Faculty Association ("PFA") and the Washoe County School District ("WCSD") are institutional rather than individual defendants and therefore do not have qualified

immunity. Because the district court held that the motto "Tomorrow's Leaders" did not violate the First Amendment, it did not reach the question of damages stemming from that violation. It did reach the question of damages resulting from the exemption for uniforms of other organizations, concluding that the Frudden children suffered no actual damages. But it reached that question only as a means to avoid deciding whether the exemption violated the First Amendment. On appeal, Frudden makes no argument about the quantum of damages.

Under the circumstances, we conclude that the question of damages for the two First Amendment violations by the Institutional Defendants remains to be decided by the district court. We remand for that purpose.

## Conclusion

We affirm the district court's grant of summary judgment to the Individual Defendants and reverse the district court's grant of summary judgment to the Institutional Defendants. We remand to the district court for further proceedings consistent with this opinion.

The parties to bear their own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**