**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MERCEDES URBINA,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>NATIONAL BUSINESS FACTORS INC.,<br>*Defendant-Appellee.* | No. 19-16055<br><br>D.C. No.<br>3:17-cv-00385-WGC<br><br>ORDER AND<br>OPINION |

Appeal from the United States District Court
for the District of Nevada
William G. Cobb, Magistrate Judge, Presiding

Submitted August 12, 2020*
San Francisco, California

Filed November 5, 2020

Before: A. Wallace Tashima and Morgan Christen, Circuit
Judges, and Joseph F. Bataillon,** District Judge.

Order;
Opinion by Judge Christen

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

## SUMMARY[***]

### Fair Debt Collection Practices Act

The panel filed:  (1) an order granting a request for publication, withdrawing the mandate, withdrawing a memorandum disposition, and replacing the memorandum disposition with an opinion; and (2) an opinion reversing the district court's grant of summary judgment in favor of the defendant debt collector in an action under the Fair Debt Collection Practices Act and remanding for further proceedings.

Agreeing with the Eleventh Circuit, the panel held that the FDCPA's bona fide error defense does not allow debt collectors to avoid liability by contractually obligating creditor-clients to provide accurate information, nor by requesting that creditor-clients provide notice of any errors in the accounts assigned for collection without waiting to receive a response before instituting collection efforts.

### COUNSEL

Christopher P. Burke, Reno, Nevada; Michael C. Lehners, Reno, Nevada; for Plaintiff-Appellant.

Robert C. Herman, Carson City, Nevada, for Defendant-Appellee.

---

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**ORDER**

Plaintiff-appellant's request for publication, filed August 20, 2020, is **GRANTED**. The original mandate that issued on September 8, 2020, is withdrawn. The memorandum disposition filed on August 17, 2020, and reported at 816 F. App'x 232 (9th Cir. 2020), is withdrawn and replaced with an Opinion filed together with this order. Further petitions for rehearing or rehearing en banc may be filed.

---

**OPINION**

CHRISTEN, Circuit Judge:

In this appeal, we consider whether a debt collector may invoke the "bona fide error" defense to avoid liability for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C § 1692 *et seq.*, by contractually obligating creditor-clients to provide only accurate information regarding delinquent accounts. Plaintiff Mercedes Urbina sued National Business Factors (NBF), a debt collector that undertook collection efforts against Urbina based on information it received from her creditor. Some of the information proved to be incorrect. NBF argues that because it contractually required Urbina's creditor to provide it with accurate information, NBF qualified for the FDCPA's bona fide error defense. 15 U.S.C. § 1692k(c). The district court granted summary judgment in favor of NBF, concluding that NBF was entitled to the defense because it employed a procedure reasonably adapted to avoid errors of the type that occurred in Urbina's case.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse the district court's judgment. The two procedures NBF relied upon did little more than evidence an attempt to outsource the duties the FDCPA imposes upon debt collectors. We conclude the FDCPA's bona fide error defense does not allow debt collectors to avoid liability by contractually obligating creditor-clients to provide accurate information, nor by requesting that creditor-clients provide notice of any errors in the accounts assigned for collection without waiting to receive a response before instituting collection efforts.

## I.

The basic facts are not in dispute. NBF and Tahoe Fracture Clinic (TFC) entered into a Collection Service Agreement in 2014 whereby TFC agreed that it would assign outstanding debts for collection "with only accurate data and that the balances reflect legitimate, enforceable obligations of the consumer." Although NBF's form agreement does not mention any particular practice for verifying the amount of debts assigned for collection, NBF claims it follows a standard practice when clients refer accounts for collection. Specifically, NBF represented in the district court that it routinely generates an automatic response listing the account name and number, the total amount due, and the date of last payment. According to NBF, its routine practice is to request that its clients notify NBF if they recognize errors in any of the accounts listed. NBF also follows a practice of calculating interest based on the date of the debtor's last payment.

This case arises from an unpaid balance on a medical bill for treatments Urbina received at TFC in 2015 and 2016. In

July 2016, shortly after her last treatment at TFC, a portion of Urbina's balance was paid by insurance. Urbina also made a series of monthly payments, the last of which she tendered in August 2016. TFC advised Urbina that she had an outstanding balance of $614.52 in a regularly distributed notice dated September 23, 2016. Urbina did not respond to that notice or to further notices and TFC forwarded the bill to NBF for collection. According to NBF, it sent a letter to TFC requesting that TFC verify the amount due. The following day, without receiving a response from TFC, NBF sent Urbina a collection notice seeking payment of $614.52 plus $29.07 in interest.[1]

Urbina filed a complaint in the District of Nevada alleging violations of the FDCPA, and moved for summary judgment. In opposing Urbina's motion, NBF admitted it received an incorrect payment history from TFC and mistakenly calculated interest beginning February 26, 2016 rather than August 12, 2016, which was the date of Urbina's final payment. Because NBF had charged too much interest and attempted to collect more than Urbina owed, it was undisputed that NBF violated the FDCPA. But in its opposition to Urbina's summary judgment motion, NBF argued that it was entitled to the benefit of the FDCPA's bona fide error defense. NBF's opposition was not styled as a cross-motion; it argued that summary judgment should be

---

[1] TFC did not add interest to Urbina's past-due balance, but the agreement TFC had with NBF allowed NBF to add interest on unpaid accounts at the rate allowed by Nev. Rev. Stat. § 99.030. The district court concluded that NBF properly collected interest at the statutory rate, and Urbina does not contest this on appeal.

entered in its favor pursuant to Federal Rule of Civil Procedure 56(f).[2]

The district court concluded that NBF properly added interest to the balance of Urbina's account, that NBF violated the FDCPA by improperly calculating the interest due, but that NBF qualified for the bona fide error defense. The district court denied Urbina's motion and entered summary judgment in favor of NBF. *Urbina v. Nat'l Bus. Factors, Inc. of Nev.*, 2019 WL 1767890 (D. Nev. 2019).

On appeal, Urbina argues that NBF does not qualify for the bona fide error defense because it did not have adequate procedures in place to prevent errors of the type that occurred here. NBF counters that it reasonably relied on TFC's promise to provide accurate information pursuant to the Collection Service Agreement. NBF also claims it followed its standard practice after TFC assigned Urbina's delinquent account for collection, by requesting that TFC notify it of any inaccuracies in the record of the delinquent account. NBF did not retain a copy of the automatic response it claims it sent to TFC and an example of NBF's automatic response was not produced until NBF opposed Urbina's summary judgment motion.

## II.

We review de novo a district court's decision to grant summary judgment. *Branch Banking & Tr. Co. v. D.M.S.I.,*

---

[2] In relevant part, Rule 56(f) states, "the court may grant summary judgment for a nonmovant . . . or consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

*LLC*, 871 F.3d 751, 759 (9th Cir. 2017). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017). In doing so, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Id*.

## III.

The district court ruled TFC's contract with NBF to provide "only accurate data" was a procedure NBF reasonably adapted to avoid violating the FDCPA. Urbina argues this was error.

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits debt collectors from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). Debt collectors are strictly liable for FDCPA violations, *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010), and a debt collector who violates the FDCPA is liable for actual damages, attorney's fees and costs, and additional damages not to exceed $1,000 per violation. 15 U.S.C. § 1692k. The FDCPA is "broadly remedial," and should be liberally

construed in favor of consumers. *McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1092 (9th Cir. 2020).

To avoid liability, debt collectors may raise the limited affirmative defense that their conduct was "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). The burden is on the debt collector to prove this defense by a preponderance of the evidence. *Id.*; *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

The bona fide error defense requires a showing that the debt collector: (1) violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid the violation. *Id.* With respect to the first two factors, the district court concluded that NBF violated the FDCPA unintentionally and the violation resulted from a bona fide error. The parties do not contest these two rulings.

With respect to the third factor, we have said that "[a] debt collector is not entitled under the FDCPA to sit back and wait until a creditor makes a mistake and then institute procedures to prevent a recurrence." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008). Instead, "the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors, including, but not limited to, errors in calculation and itemization." *Id.* Debt collectors seeking to take advantage of the bona fide error defense must explain "the manner in which [their procedures] were adapted to avoid the error," *id.*; the bona fide error defense does not shield debt collectors who unreasonably rely on creditors' representations. *Clark v.*

*Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006).

We have previously rejected the contention that unquestioned reliance on a creditor's information can suffice as a bona fide defense. *Reichert*, 531 F.3d at 1006. In *Reichert*, a debt collector attempted to collect attorney's fees on behalf of a landlord despite state law that clearly prohibited the collection of such fees. The debt collector admitted the mistake but argued it was entitled to the benefit of the bona fide error defense because the landlord had submitted accurate information in the past. *Id.* We disagreed and held that the debt collector's reliance on the creditor's history of providing accurate information was not a procedure reasonably adapted to avoid receiving inaccurate information. *Id.* at 1007. Citing the Seventh Circuit's opinion in *Jenkins v. Heintz*, 124 F.3d 824, 834–35 (7th Cir. 1997), we described several "elaborate procedures" that enabled the debt collector in that case to successfully invoke the bona fide error defense: (1) "a requirement that the creditor verify under oath that *each charge* was accurate," (2) "the publication of an in-house fair debt compliance manual, updated regularly and supplied to each firm employee," (3) "training seminars for firm employees collecting consumer debts," and (4) "an eight-step, highly detailed pre-litigation review process to ensure accuracy and to review the work of firm employees to avoid violating the Act." *Reichert*, 531 F.3d at 1006.

The Supreme Court addressed the bona fide error defense in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010). There, the Court held that a debt collector who made a legal error in interpreting the FDCPA did not qualify for the bona fide error defense. More important for resolving this appeal, the Court contrasted legal

errors that do not qualify for the defense, with reasonably adapted routine procedures that might. The Court explained:

> "[t]he dictionary defines 'procedure' as 'a series of steps followed in a regular orderly definite way.' . . . In that light, the statutory phrase is more naturally read to apply to processes that have mechanical or other such 'regular orderly' steps to avoid mistakes."

*Id.* (internal citations omitted).

*Jerman* reasoned that "the broad statutory requirement of procedures reasonably designed to avoid 'any' bona fide error indicates that the relevant procedures are ones that help *to avoid errors like clerical or factual mistakes.*" *Id.* (emphasis added). The Eleventh Circuit followed this lead when it denied a debt collector's claim, nearly identical to NBF's here, that an engagement contract obligating a creditor-client "to present only accurate information on debts" qualified as a procedure reasonably adapted to avoid erroneous interest calculations. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1274–75 (11th Cir. 2011). The Eleventh Circuit observed that the debt collector's "form contract" was signed four years before the subject debt was sent for collection, and ruled that employing a one-time form contract with a creditor-client, then blindly relying on the creditor to send only valid debts, is not a procedure designed to avoid erroneous interest charges resulting from an inaccurate payment history. *Id.*; *see also Turner v. Firestone Tire & Rubber Co.*, 537 F.2d 1296, 1298 (5th Cir. 1976) ("While [a clerical error] is one that is easy to commit, it is also the type of error that can be easily detected by implementation of an inexpensive screening procedure.").

The Eighth Circuit has cautioned that whether a procedure is sufficient to qualify for the bona fide error defense is a "fact-intensive inquiry," *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008), and the Seventh Circuit echoed that view in *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 900 n.3 (7th Cir. 2015) (declining to "volunteer[] sweeping generalizations" about adequate procedures because "[s]uch matters are better resolved on a case-by-case basis." (quoting *Owen*, 629 F.3d at 1277)). We agree that the particular facts of these cases will dictate the outcome, but we also recognize that the procedures our sister circuits have approved for catching errors in creditor-clients' data are significantly more likely to catch errors than a form contract requiring customers to provide only accurate information. *See Abdollahzadeh v. Mandarich Law Grp., LLP*, 922 F.3d 810, 818 (7th Cir. 2019) (finding procedure sufficient where bill collector "relied on account information provided by its client" but subjected it to "an automated scrub that culled out-of-statute debts," the client supplied an affidavit attesting to the accuracy of its information, and the debt collector's attorney verified the statute of limitation had not expired); *Wilhelm*, 519 F.3d at 421 (approving bona fide error defense where debt collector received specific instructions to segregate principal and interest from creditor-client to avoid charging interest on interest); *Johnson v. Riddle*, 443 F.3d 723, 730 (10th Cir. 2006) (approving of "[s]ending employees and staff to training seminars or subjecting employees and staff to compliance testing").

Here, NBF's collection service contract with TFC is similar to the contract the Eleventh Circuit found insufficient to qualify for the bona fide error defense in *Owen*. The engagement contract also stands in contrast to the procedures cited with approval in *Reichert.* The procedures that have

qualified for the bona fide error defense were consistently applied by collectors on a debt-by-debt basis; they do not include one-time agreements committing creditor-clients to provide accurate information that are later acted upon without question.

The district court's order granting summary judgment in favor of NBF relied heavily on *McCollough*, 637 F.3d at 948, but that case is distinguishable. *McCollough* denied a law firm's attempt to invoke the bona fide error defense because the firm unreasonably relied on a file transmitted by another debt collector and, among other things, failed to recognize that the relevant collection service agreement actually disclaimed the accuracy or validity of the creditor-client's data. *Id.* at 949. The district court also relied on *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003), for the proposition that "where there is an agreement that the creditor-client would only provide reliable information, there is evidence of reasonable reliance on creditor information." But in *Turner*, the Seventh Circuit did not squarely consider whether such evidence would qualify for the bona fide error defense; it reversed a district court's order granting summary judgment on a different issue and remanded the case to the trial court. In dicta, the Seventh Circuit observed that if the bona fide error defense was asserted on remand, an agreement to provide reliable information might suffice. Notably, the trial court concluded on remand, as we do here, that the debt collector's reliance on its clients to provide accurate information "[did] not in any way compare to the types of procedures and systems found to qualify for the bona fide error defense." *Turner v. J.V.D.B. & Assocs., Inc.*, 318 F. Supp. 2d 681, 686 (N.D. Ill. 2004). Neither *McCullough* nor *Turner* supports NBF's defense.

NBF's fallback argument is that even if its collection service contract was insufficient to qualify for the bona fide error defense, it separately qualifies because it sends its creditor-clients follow up requests seeking verification of the accuracy of their information. This is closer to the mark, but it still falls short because it is uncontested that NBF did not wait for a response from TFC before it attempted to collect from Urbina. Because NBF does not argue that it routinely waits for creditor-clients to respond before sending collection notices to debtors, NBF fails to show that its practice of requesting account verification from its clients is genuinely calculated to catch errors of the sort that occurred here. Neither of NBF's practices qualifies for the bona fide error defense.[3]

We reverse the district court's order granting summary judgment in favor of NBF and remand to the district court for further proceedings.

**REVERSED AND REMANDED.**

Appellee to bear costs.

---

[3] In discovery, NBF did not produce the follow up request, nor was it able to prove that TFC received a letter similar to the example it produced in opposition to Urbina's motion for summary judgment. Urbina objected to the admissibility of the sample follow up letter. We do not decide whether the follow up letter was admissible because NBF's argument fails even if the follow up letter is considered.