NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUN 1 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DANIEL YOUNG, AKA Katherine Wren
Katzenjammer; RICHARD YOUNG,

Plaintiffs-Appellees,

v.

TRAVIS HAURI, individually and in his
capacity as a crime scene investigator of the
Bellingham Police Department; DAVID
JOHNSON, individually and in his capacity
as a sergeant of the Bellingham Police
Department,

Defendants-Appellants,

and

CITY OF BELLINGHAM; et al.,

Defendants.

No.   19-36098

D.C. No.
2:18-cv-01007-JLR-MLP

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted February 2, 2021
Seattle, Washington

Before:  GRABER, McKEOWN, and PAEZ, Circuit Judges.

---

   [*]   This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Defendants Travis Hauri and David Johnson appeal the district court's denial of qualified immunity. We have jurisdiction under 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Reviewing de novo and considering the evidence in the light most favorable to the non-movant, Plaintiff Katherine Katzenjammer, *Liberal v. Estrada*, 632 F.3d 1064, 1073 (9th Cir. 2011), we affirm.

1.      The district court properly concluded that Defendants, both of whom are police officers, were not entitled to qualified immunity. "We apply a two-part analysis in qualified immunity cases." *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017). We must decide (1) whether the plaintiff's alleged facts "make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant[s'] alleged misconduct." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

First, a reasonable jury could find that Defendants violated Katzenjammer's Fourth Amendment rights. The Fourth Amendment mandates that "[b]efore [a police officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so." *Sibron v. New York*, 392 U.S. 40, 64 (1968). Searches conducted without a warrant "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S.

2

366, 372 (1993) (citation omitted). The Supreme Court has recognized the following exceptions for searches of an individual's body: searches incident to lawful arrest; searches supported by reasonable suspicion of dangerousness, exigent circumstances, or consent; and searches conducted in special locations. *See United States v. Kincade*, 379 F.3d 813, 822 (9th Cir. 2004) (en banc) (plurality opinion) (arrest, reasonable suspicion of dangerousness, and special locations); *Kentucky v. King*, 563 U.S. 452, 460 (2011) (exigent circumstances); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (consent).

Defendants' alleged search of Katzenjammer's unconscious body violated the Fourth Amendment. Defendants concede that the alleged conduct constituted a warrantless search of Katzenjammer's person. *See Terry v. Ohio*, 392 U.S. 1, 16–17 (1968) (holding that a "careful exploration of the outer surfaces of a person's clothing" constitutes a search and a "serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and [] is not to be undertaken lightly"); *Sibron*, 392 U.S. at 64. But Katzenjammer was not detained or under arrest and Defendants cannot argue that any of the other exceptions apply.[1] Thus, Defendants' alleged actions violated Katzenjammer's

---

[1] During rebuttal at oral argument, counsel for Defendants raised the administrative search exception to the warrant requirement. Because the administrative search exception was not raised in either of Defendants' briefs, that argument is waived. *See Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1061 (9th Cir. 2020). Defendants' invocation of the community caretaking exception is also unavailing.

Fourth Amendment rights. *See, e.g.*, *Kincade*, 379 F.3d at 822.

Defendants' attempts to analogize to cases involving searches of individuals who are under arrest, in jail or prison, or at the border are unpersuasive. Their reliance on *United States v. Jacobsen*, 466 U.S. 109 (1984), also fails. A person's expectation of privacy in her body cannot be compared to that of a package that is "virtually certain" to contain "nothing but contraband." *See id.* at 120 n.17; *see also United States v. Young*, 573 F.3d 711, 720–21 (9th Cir. 2009) (holding that *Jacobsen* "suggests a very restricted application of [its] holding" and declining to extend its rule beyond such packages). Further, unlike the officers in *Jacobsen*, Defendants initiated the search of Katzenjammer's body of their own accord, rather than at a third party's suggestion. *See Jacobsen*, 466 U.S. at 119. In sum, no exception to the warrant requirement applies.

Second, Defendants' alleged search violated clearly established Fourth Amendment law. "The rule that a search violates the Fourth Amendment if it is not supported by either probable cause and a warrant or a recognized exception to

---

The officers were not responding to a public danger, *Cady v. Dombrowski*, 413 U.S. 433, 447 (1973), and we have held that "the [Supreme] Court in *Cady* intended to confine the holding to the automobile exception," *United States v. Erickson*, 991 F.2d 529, 532 (9th Cir. 1993) (citation and internal quotation marks omitted). Indeed, the Supreme Court just confirmed that *Cady* should not be read expansively. *See Caniglia v. Strom*, 141 S. Ct. 1596, 1599–1600 (2021) (holding that *Cady* "repeatedly stressed" that its rule applied to vehicles and that *Cady* did not issue "an open-ended license to" conduct warrantless searches).

the warrant requirement has long been clearly established." *Friedman v. Boucher*, 580 F.3d 847, 858 (9th Cir. 2009). Thus, with Fourth Amendment searches, "the real question in determining whether Defendants are entitled to qualified immunity is whether it was clearly established, at the time of the search, that such a search does not fall under any recognized exception." *Id.* It has long been established that an officer's warrantless search underneath an individual's clothes, without the person's consent, reasonable suspicion of dangerousness, or any other exception to the warrant requirement, violates the Fourth Amendment. *See, e.g.*, *Terry*, 392 U.S. at 16–17; *Dickerson*, 508 U.S. at 372–73; *Kincade*, 379 F.3d at 822 (collecting cases).

Defendants nonetheless argue that the right in question was not clearly established because there is no case describing these precise factual circumstances. Their argument is unpersuasive for two reasons. First, we have "not hesitated to deny qualified immunity to officials in certain circumstances, even without a case directly on point." *Wright v. Beck*, 981 F.3d 719, 735 (9th Cir. 2020) (citation and internal quotation marks omitted); *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc). Second, Defendants mistake the qualified immunity analysis for a Fourth Amendment search with that of a Fourth Amendment seizure when a plaintiff alleges excessive force. Only the latter requires the fact-specific balancing test from *Graham v. Connor*, 490 U.S. 386 (1989). *See Kisela v.*

*Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (holding that, under *Graham*, "the question whether an officer has used excessive force 'requires careful attention to the facts and circumstances of each particular case'" (citation omitted)). But searches—at least in places where society recognizes a strong interest in privacy—require more bright lines. Because police conduct searches so frequently, they need clear, easy-to-apply rules that notify all officers which searches are not permissible. *See United States v. Winsor*, 846 F.2d 1569, 1578 (9th Cir. 1988) (en banc) (holding that "a fact-specific case-by-case approach would plunge courts into a neverending and essentially standardless assessment of every search"). Thus, under binding precedent from this court and the Supreme Court, any reasonable officer would have known that Defendants' suspicionless and warrantless search of Katzenjammer's body, while she lay unconscious in a hospital bed, violated the Fourth Amendment. *See Wright*, 981 F.3d at 734 ("[W]e look to binding precedent to determine whether an officer had 'fair notice' his or her conduct violated a constitutional right." (citation omitted)).

We therefore affirm the district court's denial of qualified immunity and denial of summary judgment on Katzenjammer's 42 U.S.C. § 1983 claim.

2.    Katzenjammer's answering brief also seeks reversal of the district court's order granting summary judgment to Defendants on her intentional infliction of emotional distress claim. Because Katzenjammer did not file a notice

6

of cross-appeal, we have discretion in deciding whether to consider her argument. *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1298 (9th Cir. 1999). Under the *Mendocino* factors, we would decline to consider Katzenjammer's unnoticed cross-appeal. *Id.* at 1299. But even if the *Mendocino* factors were to weigh in favor of exercising our discretion, we do not have jurisdiction over Katzenjammer's cross-appeal. *Id.* at 1296 ("In general, on interlocutory appeal, a review of the failure to grant qualified immunity is limited to that issue."). The district court's grant of summary judgment on the emotional distress claim is not "inextricably intertwined" with its denial of qualified immunity on Katzenjammer's § 1983 claim, nor is review of the former necessary to ensure meaningful review of the latter. *Id.* (citation omitted).

**AFFIRMED.**