FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVEN MORALES, Co-Personal
Representative of the Estate of:
deceased Raymond Perry; NICOLE
PERRY, Co-Personal Representative
of the Estate of: deceased Raymond
Perry; CHOPPER II LLC,
*Plaintiffs-Appellants*,

v.

UNITED STATES OF AMERICA,
*Defendant-Appellee.*

No. 17-15215

D.C. No.
3:14-cv-08110-
JJT

OPINION

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted March 13, 2018
San Francisco, California

Filed July 13, 2018

Before:  Ferdinand F. Fernandez and M. Margaret McKeown, Circuit Judges, and Roger T. Benitez,[*] District Judge.

Opinion by Judge McKeown

## SUMMARY[**]

### Federal Tort Claims Act

The panel affirmed the district court's dismissal for lack of subject matter jurisdiction of an action under the Federal Tort Claims Act ("FTCA") on the grounds that the United States Geological Survey ("USGS")'s decision not to mark a cable, which allegedly resulted in the crash of a helicopter, was driven by policy considerations and fell within the discretionary function exception to the FTCA.

Following the helicopter crash, the estate of pilot Raymond Perry, who was killed in the crash, and the owner of the helicopter filed this FTCA action, claiming that the USGS was negligent for failing to mark the cable.

The FTCA waives the government's sovereign immunity for tort claims arising out of negligent conduct of government employees acting within the scope of employment. One exception to the waiver of sovereign immunity, is the discretionary function exception, which

---

[*] The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

provides immunity from suit for any claim based upon the exercise of a discretionary duty by a federal agency or employee.

The panel applied the two-step process, outlined in *Berkowitz v. United States*, 486 U.S. 531 (1988), to determine that the discretionary function exception applied. First, the panel held that nothing in the USGS's policy created a mandatory and specific directive to mark the forty-foot high Verde River cableway, and the policy left employees with a discretionary choice about which cableways were hazardous and which should be marked. Second, the panel held that USGS's decision was susceptible to policy analysis grounded in social, economic and political concerns. The panel rejected plaintiffs' suggestion that the government could not invoke the discretionary function exception whenever a decision involved considerations of public safety.

## COUNSEL

Karen Stafford (argued), Franklin L. Smith, and Scott A. Salmon, The Cavanagh Law Firm P.A., Phoenix, Arizona, for Plaintiffs-Appellants.

Benjamin M. Shultz (argued), Robert J. Gross, and Mark B. Stern, Attorneys; Elizabeth A. Strange, Acting United States Attorney; Chad A. Readler, Acting Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellee.

**OPINION**

McKEOWN, Circuit Judge:

This appeal is one of many tort cases against the government in which we consider the government's waiver of sovereign immunity. Under the Federal Tort Claims Act (the "FTCA"), the court has no jurisdiction over claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government . . . ." 28 U.S.C. § 2680(a). The agency's action here—a decision not to mark a cable suspended over a river in Arizona—falls squarely in this discretionary function exception.

In June 2012, a helicopter piloted by Raymond Perry crashed in the Prescott National Forest, killing Perry and his three passengers, after striking an unmarked cable suspended forty feet above the Verde River. The cable had been installed by the United States Geological Survey ("USGS") as part of a cableway that enabled personnel to collect streamflow measurements and water samples. Although the cable was virtually invisible to aircraft pilots, USGS chose to place no markers or warning signs because the agency adopted the Federal Aviation Administration's ("FAA") obstruction regulations, which required that only objects more than 200 feet above ground level (hereinafter, "200 feet") must be marked.

Following the accident, Perry's estate and the owner of the helicopter (collectively, "Perry") filed suit, claiming that USGS was negligent for failing to mark the cable. We affirm the district court's dismissal of the action for lack of subject matter jurisdiction on the ground that USGS's decision not

to mark the cable was driven by policy considerations and fell within the discretionary function exception to the FTCA.

# I.  BACKGROUND

USGS is a federal agency responsible for collecting and examining scientific information about the "geological structure, mineral resources, and products of the national domain."  *See* 43 U.S.C. § 31(a).  As part of these duties, USGS monitors the nation's water resources, collecting streamflow data and water quality samples to predict floods, manage drinking water, evaluate water quality standards, aid in the preservation of aquatic habitats, and investigate streamflow history and climate change.  This information is collected through "streamgage" sites—locations equipped with an active, continuously functioning measuring device which collects the mean daily streamflow in a particular area.  When a streamgage site is installed in a location without a bridge or other stream crossing, USGS generally builds a cableway—a cable car suspended from a wire rope—to provide USGS personnel with safe access to the site.

In 1934, USGS installed a streamgage site and cableway over the Verde River Canyon in Prescott National Forest, Arizona.  USGS has operated the streamgage site intermittently since its installation, and continuously since October 1988.  The cable stretched 286 feet across the canyon at a height of forty feet above the river.  Despite the cable being virtually invisible from 100 feet or more away, or to aircraft flying at the same height, USGS did not mark the cableway or add warning signs because the cable did not meet the criteria for marking under USGS policy.

Since 1980, USGS has re-examined its policy on marking several times, often in response to accidents

involving cableways.  One feature present in every version of the policy is USGS's adoption of FAA standards regarding obstructions to navigable airspace and requirements for notice of obstructions, contained in 14 C.F.R. pt. 77.  The regulations require notification to the FAA for any construction or alteration of structures that exceed 200 feet or for structures that are located within 20,000 feet of an airport or within 5,000 feet of a heliport. 14 C.F.R. § 77.9.

With this in mind, we provide a brief overview of the specific policies in place since 1984.  USGS's policy in 1984 was reflected in Memorandum No. 84.57 (the "1984 Memorandum").  The policy provided that FAA regulations do not require marking of objects less than 200 feet, but that marking of certain cableways should be considered if they are hazardous to low-flying aircraft.  USGS District offices were directed "to review all . . . cableway installations and decide which may be hazardous to low-flying aircraft," and to develop "[a] plan . . . to install markers on those cableways designated as potentially hazardous."

After an aircraft struck an unmarked cableway in 1995, USGS re-examined its marking policy.  USGS considered "a broad policy to require the marking of all cableways," but ultimately decided against it after consulting with an FAA Air Specialist, Ted Melland.  After reviewing photographs and aeronautical charts for a subset of cableways, Melland recommended against marking any of them because none met the FAA criteria set forth in 14 C.F.R. § 77.  Melland also advised against marking any USGS cableways that did not meet the FAA criteria.  Melland observed that USGS's "good intentioned efforts to mark or light certain crossings could be considered excessive in our well established system for maintaining aeronautical safety in obstruction

evaluations nationwide," and that marking cableways under 200 feet could have potentially harmful effects to pilots who expect to see obstruction markers only at higher levels.

USGS later issued Memorandum No. 2000.13 (the "2000 Memorandum"), which superseded the 1984 Memorandum. At the outset, the policy recognized that "Congress has charged the FAA with the responsibility to promote the safety of aircraft and the efficient use of navigable airspace." The policy then reiterated USGS's adoption of the FAA's marking criteria set forth in 14 C.F.R. § 77, specifically noting that structures exceeding 200 feet "should normally be marked." It also set forth notice requirements for new and existing cableways, requiring (i) notification to the FAA of any plans for new cableways that will exceed 200 feet or fall within 20,000 feet of an airport or 5,000 feet of a heliport; (ii) that USGS District Chiefs verify to Regional Hydrologists that all existing cableways that exceed 200 feet or fall within 20,000 feet of an airport or 5,000 feet of a heliport have been submitted to the FAA; and (iii) that USGS District Chiefs verify to Regional Hydrologists that all existing cableways that are marked have been submitted to the FAA. None of these new requirements involved cableways under 200 feet.

In 2008, USGS issued a policy manual—Survey Manual, No. SM 445-2-H (the "2008 Survey Manual")—that was functionally the same as the 2000 Memorandum. The 2008 Survey Manual reiterated that it was USGS policy to comply with the FAA's regulations "regarding establishment of an obstruction evaluation program and use of structural aircraft warning markers." It also required notification to the FAA for "existing marked or unmarked cableways and plans for construction of new cableways that exceed 200 ft above the

surrounding terrain, or structures of a lesser height within 20,000 ft of an airport or within 5,000 ft of a heliport."

Even though the default policy was not to mark cableways under 200 feet, USGS also considered site-specific and other factors to determine whether to mark cableways that did not meet FAA criteria. Such considerations included the occurrence of past accidents at the site, observation of aircraft in the area, and requests from land-management agencies. The specific considerations relevant to the Verde River cableway included the absence of any prior accidents; the cost of installation; the physical risk to employees installing markers; the risk of confusion to pilots who expect to see markings at higher heights; the likelihood of vandalism by marksmen and accompanying economic and safety concerns; and the United States Forest Service's ("USFS") scenic integrity objectives to "minimize or eliminate visual distractions" in the area given the Verde River's designation as a "Wild and Scenic River."

## II. ANALYSIS

### A. Federal Tort Claims Act Framework

The FTCA waives the government's sovereign immunity for tort claims arising out of negligent conduct of government employees acting within the scope of employment. 28 U.S.C. § 1346(b)(1). This waiver allows the government to be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id*. And, of course, if there is no waiver, the court lacks subject matter jurisdiction, an issue that we review de novo. *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1173 (9th Cir. 2002).

One exception to this broad waiver of sovereign immunity, called the discretionary function exception, provides immunity from suit for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of this exception is to prevent "judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). The United States bears the burden of proving the applicability of the discretionary function exception. *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

The Supreme Court established a two-step process to determine the applicability of the exception. *See Berkovitz v. United States*, 486 U.S. 531, 536 (1988). We determine first whether the act is "discretionary in nature," which necessarily involves an "'element of judgment or choice.'" *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz*, 486 U.S. at 536). The "judgment or choice" requirement is not met where a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536. "If there is such a statute or policy directing mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee 'has no rightful option but to adhere to the directive.'" *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (quoting *Berkovitz*, 486 U.S. at 536).

If discretion is involved, then we consider whether the discretion "is of the kind that the discretionary function exception was designed to shield"—namely, "only governmental actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 536–37 (citation and internal quotation marks omitted). "Public policy" has been understood to mean considerations "grounded in social, economic, and political policy." *Varig Airlines*, 467 U.S. at 814. The focus is on whether the actions are "susceptible to a policy analysis," not whether the government actually took such public policy judgements into consideration when making the decision. *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998).

## B. Application of the Discretionary Function Exception

### 1. Discretionary Nature of Cable Marking Policy

No federal statute, regulation, or policy specifically prescribed the marking of the Verde River cableway. Instead, the decision of whether to mark the cableway was a result of considered judgment and choice. The Verde River cableway fell within USGS's default policy not to mark cableways that did not meet the FAA's criteria under 14 C.F.R. pt. 77—it did not exceed 200 feet and was not located within proximity of an airport or heliport. Nor did the cableway trigger any of the verification requirements set forth in the 2008 Survey Manual and 2000 Memorandum, which only applied to new cableways exceeding 200 feet, and existing cableways that exceeded 200 feet or were already marked. There was no mandatory directive within USGS's policies to mark the cable.

USGS's ability to consider factors such as competing safety interests, cost of installation and maintenance, and the

effect on scenic integrity—all of which weighed against marking the cableway—also demonstrates that no "course of action" was prescribed. *Berkovitz*, 486 U.S. at 536. That USGS was able to consider such specific factors, which necessarily vary by site, highlights that judgment was involved in the decision. This is not an instance in which USGS's policy identified site-specific considerations that mandated marking. No such guidance was provided in any USGS policy, so USGS employees were left to exercise their judgment when deciding whether to mark a particular site.

Perry's arguments relating to the 1984 Memorandum do not convince us otherwise. Even if the 1984 Memorandum applied at the time of the accident, it did not create a mandatory directive to mark the cable. As with the other policies, the default position was to mark only those cableways that met FAA criteria. Although the policy directed USGS personnel "to review" all cableways, "decide which may be hazardous," and develop a plan to install markers at those sites, this language cannot be construed as a "mandatory and specific" directive to mark the Verde River cableway. Rather, the policy left employees with a discretionary choice about which cableways were hazardous and which should be marked. In sum, nothing in USGS's policy created a mandatory and specific directive to mark the forty-foot high Verde River cableway.

### 2. Cable Marking Policy Based on Considerations of "Public Policy"

The second step of the *Berkovitz* inquiry—whether USGS's decision is susceptible to policy analysis grounded in social, economic, and political concerns—also cuts against Perry's position. *Gaubert*, 499 U.S. at 323–26. This case is remarkably congruent with our decision in *Mitchell v. United States*, in which we held that the Bonneville Power

Administration's ("BPA") decision to adopt FAA regulations to determine whether to mark ground wires was discretionary and rooted in public policy. 787 F.2d 466, 468 (9th Cir. 1986). Mitchell's estate sued the BPA under the FTCA after Mitchell crashed his plane into a ground wire while crop dusting a field. The BPA did not mark the wires because it had adopted the FAA's standards for marking, which, at the time, only required marking objects exceeding 500 feet. We reversed the district court's conclusion that the discretionary function exception did not apply and underscored the policy nature of the agency's decision:

> The BPA did not negligently install or maintain warning devices, but rather, affirmatively decided to adopt the FAA's policy of not marking ground wires below 500 feet. The Federal Aviation Act, 49 U.S.C. § 1421 authorized the FAA to regulate air safety. The BPA does not have similar statutory authorization and therefore chose to rely on FAA standards regarding whether to mark ground wires. Its choice to leave air space safety standards to be set chiefly by the FAA was grounded in social, economic, and political policy. Our review of this decision would encroach upon the agency's decisionmaking process; the exception therefore applies and we are without jurisdiction to review the agency's decision.

*Id.* (citation and internal quotations marks omitted).

Like the BPA, USGS's decision to defer to the FAA as the agency charged with "the responsibility to promote the

safety of aircraft and the efficient use of navigable airspace" is grounded in social, economic, and political policy. USGS recognized the FAA's role and expertise in regulating navigable airspace, and affirmatively decided to defer to the agency's standards with respect to marking.

Although our analysis in *Mitchell* is sufficient to end the inquiry, it bears noting that USGS's decision was susceptible to a number of additional social, economic, and political considerations. For example, there were competing safety concerns, such as the risk of confusing pilots "who expect to see obstruction markers only at higher levels," and the risk to USGS personnel tasked with installation or maintenance of the markers. Economic factors were also considered, such as the cost of installation and maintenance of the markers, particularly given the likelihood of vandalism. USGS also knew of USFS's objective to minimize visual distractions to meet "scenic integrity objectives" given the Verde River's designation as a "Wild and Scenic River" and bald eagle nesting area.

All of these considerations embody the type of policy concerns that the discretionary function exception is designed to protect, reflecting that USGS's decision was based on competing policy considerations related to safety to aircraft, safety to USGS personnel, financial burden, protection of scenic integrity, and respect to the objectives of land-management agencies. *See*, *e.g.*, *Terbush*, 516 F.3d at 1136–37 (discretionary function exception applied to a decision not to warn of a rockfall hazard caused by installation of a water management center because the decision involved a "process of identifying and responding to hazards in the wild" and "the mandates of access, conservation and safety were at issue . . . in identifying the scope of the rockfall hazard as well as the appropriate means

of warning the public."); *Blackburn v. United States*, 100 F.3d 1426, 1433–34 (9th Cir. 1996) (discretionary function exception applied to decision rejecting "placement of barriers on or along [a] bridge" because the agency had to balance the needs of warning the public against "visitor enjoyment, preservation of the historical features of the bridge, the need to avoid a proliferation of man-made intrusions, and protection of wildlife and the general riparian environment"); *Valdez v. United States*, 56 F.3d 1177, 1180 (9th Cir. 1995) (discretionary function exception applied to decision to design trail without guard rails or barriers because it "implicate[d] a choice between the competing policy considerations of maximizing access to and preservation of natural resources versus the need to minimize potential safety hazards"); *Childers v. United States*, 40 F.3d 973, 975 (9th Cir. 1994) (discretionary function exception applied to a decision not to warn of unmaintained trails because the decision was "inextricably linked to central policy questions" relating to access and preservation).

We reject the suggestion that the government cannot invoke the discretionary function exception whenever a decision involves considerations of public safety. This sweeping exemption would severely undermine the discretionary function exception and is unsupported by our precedent. In case after case, we have considered the government's balancing of public safety with a multitude of other factors. *See, e.g.*, *Terbush*, 516 F.3d at 1137 (balancing safety with considerations of access and conservation in deciding whether to warn the public of a rockfall hazard); *Miller*, 163 F.3d at 596 (balancing public safety with considerations of firefighter safety, cost, and resource damage in deciding how to fight a forest fire); *Blackburn*, 100 F.3d at 1433–34 (balancing safety with

considerations of visitor enjoyment, preservation of historical features, desire to avoid proliferation of man-made intrusions, and protection of wildlife in deciding how to warn the public of the danger of diving from a bridge).

Perry's reliance on *Young v. United States* to argue that the exception does not apply is also misplaced. 769 F.3d 1047 (9th Cir. 2014). *Young* involved the National Park Service's decision not to place warning signs near a transformer located within a national park. We held that the discretionary function exception did not apply because the decision was not susceptible to any of the government's purported policy considerations. Although the government claimed to balance safety with access and preservation concerns, the transformer was not in an area of the park in which the agency sought to provide access, and the transformer itself detracted from the scenery. Thus, *Young* turned on the specific facts of the case, which showed that the government's decision not to install warning signs was "totally divorced" from the alleged policy concerns. *Id.* at 1057. There must be "'some support in the record' that the particular decision the [government] made was actually susceptible to analysis under the policies the government identified." *Id.* (quoting *Terbush*, 516 F.3d at 1134). *Young* did not create a per se rule that decisions involving safety do not trigger the exception—it is only "[c]ases in which the government cannot provide such support [that] delimit the scope of the discretionary function exception's reach." *Id.* Unlike in *Young*, USGS's decision not to mark the cableway was "actually susceptible" to policy analysis, including deference to another agency's expertise, competing safety interests, financial burden, and the effect on scenic integrity.

Our invocation of the discretionary function doctrine in cases involving public safety should not be read as giving

the government a pass every time it raises the exception. We emphasize that the government bears the burden of sustaining the discretionary function exception and that the record must bear the weight of that burden.

Because USGS's decision not to mark the Verde River cableway was discretionary and grounded in social, economic, and political concerns, we affirm the district court's dismissal for lack of subject matter jurisdiction.

**AFFIRMED.**