**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FEB 25 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARY WILKES SHORT; et al.,

Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee,

and

QBE INSURANCE CORPORATION,

Defendant.

No.    20-35311

D.C. No. 1:18-cv-00074-BRW

MEMORANDUM*

Appeal from the United States District Court
for the District of Idaho
Bill R. Wilson, District Judge, Presiding

Argued and Submitted February 9, 2021
San Francisco, California

Before: WARDLAW and BEA, Circuit Judges, and ROSENTHAL,** District
Judge.

---

\*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*       The Honorable Lee H. Rosenthal, Chief United States District Judge
for the Southern District of Texas, sitting by designation.

Plaintiffs appeal the district court's order granting summary judgment to the United States (the "Government") on their claims arising under the Federal Tort Claims Act ("FTCA"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Plaintiffs are the widows and heirs of the individuals who died on April 10, 2015 when the Cessna Centurian they were aboard crashed into a grove of coniferous trees shortly after taking off from the Upper Loon Creek Airport (the "Airport") in Idaho's Salmon-Challis National Forest. After they settled litigation among themselves in state court, Plaintiffs sued the Government, alleging that the United States Forest Service ("USFS") is liable under the FTCA for failing to remove the coniferous trees on the north end of the Airport's runway that Plaintiffs allege caused the 2015 crash. The district court granted summary judgment to the Government, holding that the discretionary function exception to the FTCA shielded it from liability for claims based on the USFS's decisions regarding the coniferous trees at issue. *See* 28 U.S.C. § 2680(a) (precluding liability for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused").

We review de novo both the district court's grant of summary judgment, *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017) (internal citation omitted), as

well as the question of "[w]hether the United States is immune from liability in a FTCA action," *S.H. by Holt v. United States*, 853 F.3d 1056, 1059 (9th Cir. 2017) (internal citation omitted).  We undertake a two-step analysis to determine whether the discretionary function exception applies in any given case.  *See Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  First, we determine whether the Government's decision was discretionary or whether a "federal statute, regulation, or policy mandated a specific course of action."  *Bailey v. United States*, 623 F.3d 855, 860 (9th Cir. 2010).   If we conclude the decision was discretionary, we examine whether the decision at issue "is of the kind that the discretionary function exception was designed to shield, namely . . . decisions based on considerations of public policy."  *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (internal citation omitted).

At step one, we conclude the USFS's conduct was discretionary because it "retained an element of judgment or choice with respect to" its decisions regarding how to manage the grove of coniferous trees to preserve the safety of the airstrip. *Bailey*, 623 F.3d at 860.  Section 7735.21 of the USFS's Forest Service Manual (the "Manual") promulgates guidelines for operating its rural airstrips, including the Airport.  Section 7735.21 generally instructs the USFS to operate its airfields "in accordance with applicable Federal Aviation Administration (FAA) regulations and State requirements," including "[r]eport[ing] to the FAA . . . any unusual

3

operating conditions, such as obstructed approaches" or other risks to aircraft. Manual § 7735.21(1), (3). Although Section 7735.21(2) states that the USFS is to "[c]lose airfields in the Forest transportation system when a hazard to aircraft exists, unless the hazard is corrected immediately" and Plaintiffs allege the coniferous trees at issue constituted a "presumed hazard" under FAA regulations, the USFS was not required to remove the trees or otherwise shut down the Airport.

First, as Plaintiffs concede, even if Section 7735.21 mandated strict compliance with FAA regulations, the relevant FAA regulations adopted by the USFS do not mandate removal of the trees or closure of the Airport. Rather, even if hazards to air navigation are identified, FAA regulations leave local airports discretion to manage them, including further aeronautical study, and permit mitigation of any hazards by means of "regular airport inspections, and the publication of data to make pilots aware of relevant conditions at public airports."[1] Second, unrebutted testimony from the Government clarifies that the meaning of the term "hazard" in Section 7735.21(2) of the Manual differs from the FAA's definition of "hazard" under 14 C.F.R. §§ 77.13(b), 77.15(b). As used in Section 7735.21(2), hazard means "something that is a critical health and safety hazard"

---

[1] This is exactly how the USFS mitigated any risk posed by the coniferous trees, *i.e.*, by highlighting them in "appropriate publications" and listing them in the FAA's Airport Master Record since at least 1972 in order to alert pilots who use the Airport.

such as "if a fire is approaching an airstrip" or "a major flood destroy[ed] part of a runway," and it does not mean a mere "presumed hazard" or ordinary obstruction to air navigation under FAA regulations, as Plaintiffs argue. The USFS was therefore not mandated to close the Airport or remove the coniferous trees even if the trees constituted a "hazard" under FAA regulations. Thus, as the district court correctly concluded, Section 7735.21 of the Manual is best understood as a list of "general policy standards rather than specific instructions," and it leaves the USFS discretion rather than mandating "specific operation and maintenance actions for the Forest Service airfields."

Moving on to step two, we conclude that the USFS's discretionary decision to neither close the Airport nor remove the coniferous trees at issue is also plainly the type of conduct that Congress intended to shield from liability because it is "susceptible to a policy analysis." *Morales v. United States*, 895 F.3d 708, 713–14 (9th Cir. 2018). The USFS's demonstrated deference to the FAA and the Idaho Department of Transportation ("IDT")[2] for safety and maintenance decisions at the Airport due to their expertise and responsibility "to promote the safety of aircraft" is a decision "grounded in social, economic, and political policy." *Id*. at 715. The USFS's decision about the coniferous trees is also plainly susceptible to

---

[2] For its Idaho airports, the USFS relied on "tri-annual inspections by the IDT to document the condition of airfields and any needed maintenance items."

5

considerations of the "protection of scenic integrity," *id*, particularly given that the USFS manages its rural airstrips "so as not to ruin the natural surroundings or detract from the scenic views and other recreational opportunities."  Thus, the USFS's decisions regarding the coniferous trees reflected "competing policy considerations," including "safety to aircraft," "financial burden," and "protection of scenic integrity."  *Id*.  Overall, the USFS has met both requirements for immunity under the discretionary function exception, *Bailey*, 623 F.3d at 860, and the district court accordingly did not err in granting summary judgment to the Government.

Because we conclude that the discretionary function exception immunizes the Government from liability, we do not reach the district court's alternative holding based on Idaho's Recreational Use Statute.

**AFFIRMED.**